Charles W. Cribbs, et al., by Charles W. Cribbs, His Parent and Next Friend, and Ellen Lee Cribbs, by Charles W. Cribbs, Her Parent and Next Friend, Plaintiffs-Appellees, v. Stanley L. Daily and George D. Boster, Defendants-Appellants.

Stanley L. Daily, Cross Claimant and Cross Appellant, v. George D. Boster, Cross Defendant and Cross Appellee.

Gen. No. 10,640.

Fourth District.

February 21, 1966.

441

Jack E. Horsley and William E. Larrabee, of Craig & Craig, of Mattoon, for Stanley L. Daily, appellant-cross appellant. Le Forgee, Samuels, Miller, Schroeder & Jackson, of Decatur (Carl R. Miller and Jerald E. Jackson, of counsel), for George D. Boster, appellant-cross appellee.

Emanual Rosenberg, Joseph L. Rosenberg, Wayne L. Bickes, Rosenberg & Bickes, of Decatur, for appellees.

SMITH, J.

Three vehicle collision. Vehicle A (Plaintiffs) is eastbound behind B (Defendant). C (Defendant) is approaching them in the westbound lane. C and B sideswipe. C careens into A. A and his four passengers sue B *and* C. C sues B. On A and his passengers' action against B *and* C, judgment for A and all four passengers. B and C appeal. On C's action against B, judgment for B. C cross-appeals. Reference to A shall include his passengers unless otherwise indicated.

Apropos of A's action, B says it is C's fault and C says it is B's fault. B first argues that C's collision with A is strictly C's business, not his. Secondly, that if it is his business, he's not at fault. Thirdly, the verdict is not supported by the evidence or the pleadings. Fourthly, a new trial should be had because of erroneous instructions and the admission of inadmissible evidence.

C argues that the verdict against him on his action against B is against the manifest weight of the evidence, and in his reply brief, that A's verdict is too. B replies

that such latter argument is "unbelievable," and implies the same as to the former. C also suggests that A (driver only) failed to prove freedom from "contributory wrongdoing." This suggestion has to do with the forms of verdict with grouped driver and passengers as "plaintiffs." B and C have a high regard for A's verdict against *the other*. For instance, in C's reply brief, twenty-one of the twenty-two pages are an enthusiastic endorsement of A's argument that B is liable, and pari passu, B is enthusiastic apropos of A's argument that C is liable.

Here, B says we should ignore C's "unbelievable" argument because made for the first time in his reply brief. C's first brief does note this point in his Points and Authorities, but it is really not clear if he is saying that both verdicts are against the manifest weight of the evidence. But it really doesn't matter in the light of the result we reach. As we have seen, C's reply brief applauds at length A's victory over B and concludes that such is "supported and should not be disturbed." B is naturally indignant, and suggests that we can disregard this foray because reply briefs must be confined to the points raised by the appellees, and C's only reference to A's brief is "to express agreement with it," and that such is "obviously another attempt" by C "to collaborate" with A to hold B. This is probably not cricket of C, but then we are not playing cricket. Under the circumstances, both C and B are at liberty, in reply, to second A. Here, they are the true protagonists. A's presence is useful only insofar as it provides them with a deus ex machina for a new trial.

 Taking up the "grouped plaintiffs'" point, C argues that the forms of verdict given by the court covering "all plaintiffs en banc," denied the jury an opportunity to adjudicate separately "the matter of contributory negligence, at least with regard to" the driver, since a "different duty was placed upon him than was placed upon the adult passengers." The forms of verdict com-

444

plained of began, "We, the jury, find in favor of the plaintiffs . . . ." No point is made that the passengers contributed in any way to their injuries. We assume, therefore, that as a matter of law, they were not contributorily negligent, hence they could be grouped. A replies that as a matter of law, there was no issue of contributory negligence involving the driver, and that the grouping "en banc" was proper. This is a correct statement, but it remains to be seen whether or not there was an issue. In this regard, C argues somewhat obliquely, that A might have been driving too fast—hence a jury question, at odds with the nonjury question as to the passengers. To demonstrate a factual issue on this point, C gives us an imperfect equation. He suggests that if A left point X at 8:00 p. m. to catch a train at Y point by 9:00 p. m., that just maybe, this constituted a "point of pressure" upon A, he implies, to drive faster than he should. Before we can properly infer this, we would want to know a great many things, one being the mileage between points X and Y. A in answer, not to be outdone, revises the equation, and gives us the mileage between *his* point X (place of accident) and point Y as thirteen miles and that he passes point X no later than 8:30 p. m. A says we can properly work this problem, because we can take judicial notice of the mileage. We have done so and the "pressure" on A was to average thirty to forty miles per hour. This being the total proof relative to framing a factual issue on this point, we are constrained to hold, as a matter of law, that there was no issue. Of course, the duty was upon the driver in the first instance to establish that he was in the exercise of due care. Taking the affirmative of the issue, and disregarding C's algebra (which we already have), A was on his side of the road when C caromed into him. There was no evidence that he was doing aught but what he should and we, therefore, conclude that A (everybody), as a matter of law, was free from "contributory wrongdoing." Accordingly,

445

since this defense was not available to C or B *vis a vis* A, it was proper to group the plaintiffs in the forms of verdict.

On this issue, A suggests that even if there was an issue as to the driver, a jury could always put a "0" in the damage column opposite the driver's name indicating that he was contributorily negligent. We doubt this, but then if there had been "0" damages for the driver, no complaint could have been made by B or C and certainly A couldn't complain if this issue *was* present. Doubtless explanatory instructions could scotch any implication that might arise from "grouping" but that problem is not before us.

■ We now take up B's argument that A's damages were C's fault. B's car, we will remember, was ahead of A, and never hit him. It was C who hit A. If this were all, B could be right. But there is more. C and B sideswipe and within seconds C smashes into A. B would have us believe that his collision with C was a separate and distinct event, unrelated to the collision between C and A—that C's negligence "was the intervening proximate cause of plaintiffs' injuries." But the juxtaposition of time and space between the two collisions militates against any serious discussion that C's negligence intervened between B's negligence, if any, in colliding with C. B can only be exonerated if he was not at fault in his collision with C. There is no point here in re-enacting the accident to its minutest details because the collisions indubitably comprised one occurrence—as the older cases would have it, they are concatenated in time and place.

■■ Can fault be ascribed to B in his collision with C, and vice versa? On this proposition, if B or C was *not* at fault, they cannot be held by A. As we know, B says it was C's fault and C says it was B's fault and A says they are both right. What it comes down to is who, between B and C, crossed the center line and who didn't, or did they both? B admits that there is some evidence

446

that he was over the center line, but that it is only C who says so, and his "conclusions are contrary to the facts." A testified that either one or both of them crossed the center line, but qualified it, so it is argued, on cross examination, that he thought "one of the cars went over the center line." There are lots of "ifs," "ands," and "buts." One of the witnesses is described as reluctant and evasive. The physical facts are analyzed at length, with opposite conclusions. We are asked to reverse the verdict as to one or the other, because it is based on testimony that is incredible. As always, we reply that the question is not for us, but for the jury. We are of the opinion that there was evidence that B and C were both negligent, evidence that their combined negligence resulted in A's injuries.

There is, of course, a certain unreality in saying that two cars approaching each other can both cross a line drawn between them in the same instant. The statement reminds us of a variant of one of the puzzles of Zeno of Elea. Philosophically, this is an impossibility—somebody has to come over first. But the center lines of our hard roads do not lend themselves to this sophistry, and it is quite possible that both A and B arrived on the center line at the same time—at least triers of the fact could so find. If they did so and as a result, C was thrown into the path of A, that fact does not excuse B *vis a vis* A. It does, however, relieve B from being held by C—for C is at fault too. As we have stated, we have no trouble in saying that B and C's combined negligence was the proximate cause of plaintiffs' injuries, or rather, that a jury had the undoubted right to so conclude.

Thomas v. Cagwin, 43 Ill App2d 336, 193 NE2d 233, is most apt. There it was stated:

> . . . "In the case at bar all of the evidence and all inferences which can reasonably be drawn from the evidence point to the fact that one or the other, or both, defendants were negligent. The sole question

447

■■■■■■

before the jury was whether one or both defendants were liable and, if one, which one." . . .

and quoting from Pearlman v. W. O. King Lumber Co., 302 Ill App 190, 23 NE2d 826, it was stated further:

"There is no defense in this case. Either one or both of the defendants are guilty. The only question for the jury to decide is, which one of the defendants is guilty, or both, and the amount of the damages." . . .

We realize that we have pared our recitation of the evidence almost to the nub—but to us it hardly seems fair to burden the Bar of this State with another long, factual recital only to reach the conclusion that there was a question of fact. We will therefore proceed to the matters urged for reversal and remand.

■■ B, as we have seen, objects to some of the instructions and points to certain phases of the proof. At another juncture, he argues that the pleadings did not justify a joint verdict. We will consider that point now. Initially, the complaint charged that B and C had "violently collided" with each other, but, in alternate counts, stated that it was either B or C's negligence that caused this collision, which resulted in C hitting A. No single count stated that both were negligent and prayed a joint recovery. At the time of trial, B raised the objection that the complaint as it then stood would not support a joint verdict. This seems somewhat captious, but with commendable perspicacity, A then amended the Complaint to make it more perspicacious in this regard. We think A was right in the first instance, assuming, as was the case, that all counts were being tried at one time. If there was any doubt, it was removed by the amendment, which by reference incorporated the alternate counts in one count, and added the allegation that the "negligent acts or omissions of the defendants" caused A's injuries. Section 33(1) CPA ordains that pleadings are to be

448

liberally construed and this we will do. Neither B nor C (who does not raise the point) could hardly have been surprised that A was seeking damages from both of them.

 B's objections to certain instructions have a common theme—that both B *and* C could be held. One of the instructions stated that it was the "duty of the defendants" to use ordinary care for the safety of plaintiffs. There is nothing wrong in this. It is a correct statement of the law and certainly no purpose is to be served by having it read twice. For that matter, the argument could be made that the plaintiffs should not be grouped, and it should be read as to each one of them. Since there were five plaintiffs and two defendants, the same instruction would have had to have been read ten times. The remaining instructions contained such phraseology as, "defendant or defendants," "party or parties." B thinks this tells the jury that they can find against both of them. He is right, but this, as we have seen, was not error. The use of the disjunctive avoids the connotation that they *must*. B makes a great pother that C improperly put into evidence his left-front tire, as to which an expert expatiated that its deflation came externally from a cut, and not internally from a blowout. C immediately after the accident had told everybody within earshot that he had a "blowout." Apparently, he had second thoughts, and decided that his initial outburst was in error. B seizes upon this outburst as proof positive that C thought that B had *not* come over into C's lane, but rather the other way around, or, he argues, why would C apologize or try to explain how the first collision occurred. For all we know, maybe C did at first think that he had had a blowout, but even so, this would not be binding upon him, if mature reflection on the facts convinced him otherwise. In any event, the purpose of the exhibit and the expert was to belie the blowout theory, and of course, to attempt to put the blame on B for the flat tire, the theory being that the flat tire had the effect

449

of pulling C in front of A. This does lend some credence to C's theory that B crossed the centerline first. But it is only a theory and it works just as well for B—after all, there is nothing in the nature of a left-front tire, that we know of, which prevents it from being cut on either side of a centerline. Hence, as before, we are missing some essential facts, if we are to draw inexorable inferences. It is hard to see how this prejudiced B assuming that the tire and the expatiation were improper, in the sense, urged by B, that there was no foundation for either the tire or the expert. In the first place, certainly an expert can opine whether a rupture was from within by blowout, or from without, by cutting. The tire, in our opinion, was properly identified as the left-front tire by C (no other tires were damaged), and a witness testified that it was in the same condition at the trial as it was when he saw it at 7:00 a. m. on the morning following the accident. The short lapse of time between 8:30 p. m. and 7:00 a. m. was adequately explained, at least to the extent necessary. No suggestion is made, at least nothing was brought out, to the effect that anyone had tampered with the exhibit prior to the time that this witness first saw it. See Lestico v. Kuehner, 204 Minn 125, 283 NW 122, for a similar situation and similar holding.

 With all we have said, mostly with respect to B's various points, he can take some comfort, slight as it apparently is, that the verdict for him on C's action was proper. The jury's implied finding that both were negligent means that neither B nor C can recover from the other—at least the drivers can't, since we don't have comparative negligence in Illinois. We agree with B, that C's argument *is* "unbelievable"—and as to all verdicts too. At least, we don't believe it. The various judgments appealed from are affirmed.

Affirmed.

TRAPP, P. J. and CRAVEN, J., concur.