Richard Tompkins, Plaintiff-Appellee, v. Twin Oaks Dairy, Inc., Defendant-Appellant.

Gen. No. 51,446.

First District, Third Division.

January 4, 1968.

Rehearing denied February 9, 1968.

 

Joseph A. Bailey, and Jerome H. Torshen, of Chicago, for appellant.

James G. Andros, of Chicago (Jack C. Krause, of counsel), for appellee.

MR. JUSTICE SULLIVAN delivered the opinion of the court.

This is an appeal by defendant from a judgment in favor of plaintiff. The suit was for personal injuries sustained by plaintiff on defendant's business premises.

Defendant contends on appeal that it cannot be held liable to plaintiff because, as a matter of law, plaintiff was guilty of contributory negligence and defendant was guilty of no negligence, and that improper and prejudicial conduct of plaintiff's counsel deprived Twin Oaks Dairy, Inc. (Twin Oaks) of a fair trial.

Plaintiff Tompkins is a milk truck driver employed by the F & K Milk Service. At the time of the occurrence his regular run was Twin Oaks. That was the only dairy he called on. Plaintiff had been servicing Twin Oaks five days a week for approximately nine months prior to July 13, 1961, the date of the accident.

Loading and unloading of trucks at Twin Oaks were accomplished from a hydraulic lift or platform at the alley entrance to the dairy. The platform, measuring five feet by eight feet, is covered with a checkerplate floor called a diamond safety plate. The platform is just above ground level when in a down position and can be raised to the height of the truck bed or floor for loading or unloading

of the truck. Any gap between the raised platform and the truck is covered by a loading plate, also cleated, attached to the platform.

The general procedure followed in the operations is that a truck pulls up behind the plant, usually quite close to the building. A Twin Oaks' employee would put a lubricating solution on the platform. The base of this solution was composed of 45% cocoanut oil and has other ingredients which are to keep dirt and sludge from accumulating so it can be easily washed off. The substance is purchased in jelly form and is mixed with water in a ratio of about 9 pounds of lubricant to 50 gallons of water. It is put onto a conveyor chain, which serves to bring the milk out from a cooler in the plant, and onto the platform to facilitate the moving of the crates across the cleated plate. Then the platform is raised to truck level for unloading. The empty bottles, carried in metal crates (each of which holds four bottles) stacked four crates high, are taken off the truck and onto the platform. The platform is then lowered and the crates of empty bottles are removed. Next to the platform is a metal pole. Five or six feet up on the pole is a "squawk box" used for communicating with the people within the plant when milk is to be sent out. Protruding from the pole are three projections or rungs. Plaintiff described them as thin pieces of metal sticking out from the pole. The bottom and top rungs project in the same direction and the center rung projects at a right angle to the other two. Behind the platform is a chain conveyor on which the crates of filled bottles are sent from the cooler. As they reach the platform a Twin Oaks' employee pulls them off with a hook and drags them onto the platform. Some of the cocoanut oil solution adheres to the bottom of the crates thereby making it easier to pull the stacks of crates across the safety plate. The platform is again raised and the truck is loaded. Then the platform is lowered and the truck driver descends from

90

his truck by means of a step or rung on the side of his truck.

On July 13, 1961, Tompkins arrived at Twin Oaks and the usual procedure for unloading and loading his truck was followed including the pouring of the cocoanut oil solution onto the platform. Plaintiff testified that he had been assisted in the operations by Benny Medler, a Twin Oaks' employee. On that day, after the truck was loaded, no one was around to lower the platform. He stood there and waited and no one came so he decided to get down via the pole ladder. He had never before seen anyone use the pole as a ladder. He walked across the platform, went to stick his foot on the top rung and swung out into the air, went around and came down to the floor on both feet. He said that he got up and went to his truck and then realized that he had hurt his foot. He did not see Medler after the accident and he talked to no one at Twin Oaks after he fell. It was brought out at the trial that on deposition plaintiff stated that he had not put either foot on the rungs of the pole ladder before he fell and that he was on the platform just before he fell. Plaintiff did not know what had caused his foot to slip.

Medler testified that he neither heard nor saw plaintiff involved in the occurrence above described, but right afterward Tompkins told him he slipped on the steps going down from the lift. That conversation occurred just after Medler turned around from lifting up the plate.

Twin Oaks presented expert testimony that it was customary in the dairy industry to use a lubricant of some sort to help the men in sliding or dragging the crates across the metal loading areas.

A verdict in favor of plaintiff in the amount of $6,500 was returned by the jury and judgment was entered thereon. Defendant appealed.

Defendant first contends that it cannot be held liable to plaintiff because, as a matter of law, plaintiff was

guilty of contributory negligence. It is clear that plaintiff was an invitee of defendant and that he was familiar with the premises here involved from having been at the plant five days a week for a nine-month period prior to the accident. He had seen the Twin Oaks' employees use the lubricant on the conveyor and the loading platform. On the day in question he saw Medler put the solution on the platform and therefore knew it to be slippery.

Plaintiff testified that he fell while attempting to use a pole ladder to descend from the loading platform. His normal course of descent, one he had followed for nine months, was to use a step or rung on the side of his truck after the loading platform was lowered. By his own admission he had never seen anyone use the pole as a means of descent. The only prior use of the pole, to his knowledge, was as a prop for the "squawk box" for communications with the employees in the plant cooler.

In the case of Day v. Barber-Colman Co., 10 Ill App2d 494, 135 NE2d 231, the court affirmed a judgment n.o.v. entered by the trial court in favor of defendant. Plaintiff therein was working on the installation of an overhead door manufactured and sold by defendant. Plaintiff, while installing the door failed to anchor the incompleted door although he generally took such precaution. The court said on page 511:

> "The question of due care on the part of the plaintiff is ordinarily one of fact for the jury, but when the facts bearing thereon rest solely upon his own testimony, and the attendant circumstances that are not in dispute, the Court then has the duty of determining, as a matter of law, whether he, in fact, used ordinary caution for his own safety: Pollard v. Broadway Cent. Hotel Corp. (1933) 269 Ill App 77. . . . If a plaintiff has available to him two different methods or ways of doing a job, performing a task, or proceeding,—one previously tried and known to be safe,

—the other either unknown and unexplored or known to involve certain possible hazards,—and he chooses the method or way which is unknown and unexplored or known to involve certain possible hazards, and is injured in the process, he is contributorily negligent as a matter of law: Geraghty v. Burr Oak Lanes, Inc. (1954) 2 Ill App2d 48."

Another case factually similar to the case at bar is Beeville Cotton Oil Co. v. Sells (Tex Civ App), 84 SW2d 575 (1935). That court reversed a judgment in favor of plaintiff who was employed by an independent contractor to haul cottonseed to defendant's mill and unload it there. On the day in question plaintiff, who had unloaded cottonseed at defendant's plant more than 100 times in a six-weeks' period immediately prior thereto, slipped into the conveyor and injured his foot and leg. The court there ruled that plaintiff knew of the dangers of the machinery as well as the owner did, and he knew that the soles of his shoes were slick from friction with cottonseed, and he was injured not by an affirmative act of defendant owner but as a result of his own act of trying to stand on the edge of the conveyor box.

█ Tompkins comes within the scope of the rules of the above cases. His testimony as to what happened on July 13, 1961, shows that he was trying a novel method of descent from that platform. He had never seen anyone use that method. He knew the danger involved in the customary use of lubricant on the platform—that the area would be slippery. And yet, in spite of this knowledge, he attempted to use the pole and was injured. Although plaintiff stated that none of defendant's employees were around at the time to lower the platform so as to enable him to descend on his truck, he gave no indication as to how long he waited before attempting to use the pole. Nor did he indicate that he made any attempt to get

93

someone to lower the platform. Medler testified that he was there preparing to lower the platform but that he did not see or hear plaintiff fall. Following the reasoning of the Day case, supra, and the Beeville case, supra, we find that plaintiff was guilty of contributory negligence as a matter of law and, therefore, the judgment of the trial court must be reversed.

 Although our decision that plaintiff was guilty of contributory negligence is sufficient to require that the judgment be reversed, we also feel that defendant's point that plaintiff made no showing that defendant was guilty of any negligence is well taken. The use of a lubricant to make the platform slippery was customary in the dairy industry so as to facilitate the movement of heavy stacks of milk crates, and any danger inherent therein was well known to plaintiff. Although plaintiff testified at the trial that he slipped when he attempted to use the pole, his pretrial deposition showed that he slipped while on the platform. The fact that an accident occurred and plaintiff was injured raises no presumption or inference of negligence on the part of defendant. (Rotche v. Buick Motor Co., 358 Ill 507, 516, 193 NE 529.) Plaintiff himself admitted that he did not know what caused him to slip and a finding of negligence cannot be based on mere conjecture, speculation or surmise. (Kelly v. Fox, 318 Ill App 481, 488, 48 NE2d 592.) Furthermore, in the case of Dargie v. East End Bolders Club, 346 Ill App 480, 105 NE2d 537, it was held that an invitee assumes all normal, obvious or ordinary risks attendant on the use of the premises. In Dixon v. Hart, 344 Ill App 432, 435, 101 NE2d 282, the court ruled that "the mere treating of a floor with a substance that gives it a polished surface is not negligence per se." Similarly, in the instant case, the fact that Twin Oaks used a lubricant, of itself, does not mean that it was negligent as regards plaintiff who knew of the practice and the risks involved therein.

Because we have decided that the judgment of the trial court must be reversed it is unnecessary for us to decide the merits of defendant's point regarding the conduct of plaintiff's counsel during the trial.

The judgment of the trial court is reversed.

Reversed.

DEMPSEY, P. J. and SCHWARTZ, J., concur.