MARTIN J. BURNS, Plaintiff-Appellee, *v.* WEST CHEMICAL PRODUCTS, INC., Defendant-Appellant.

(No. 55681;

First District (3rd Division)—June 14, 1973.

948

John C. Doyle, Jr., of Chicago, for appellant.

William J. Harte and Philip E. Howard, both of Chicago, for appellee.

Mr. JUSTICE McGLOON delivered the opinion of the court:

This is an appeal from a jury verdict awarding the plaintiff $30,000 for an injury he sustained when, as a business invitee on the defendant's premises, he slipped and fell, allegedly due to the defendant's negligence in maintaining the property. In this appeal the defendant sets forth several reasons why the judgment should be reversed, among which are: (1) that the plaintiff was contributorily negligent as a matter of law, (2) that there was no evidence that the defendant failed to exercise due care for the plaintiff's safety, and (3) that there was no competent evidence that the defendant's negligence was the proximate cause of the plaintiff's injury. The defendant argues further that there were certain incorrect evidentiary rulings by the trial court: the admission into evidence of the shoe worn by the plaintiff on the day of the accident, the denial of defendant's motion to take a deposition of an expert witness called by the plaintiff, the trial court's restriction of defendant's cross-examination of the plaintiff, and the exclusion of evidence offered by the defendant as to its compliance with certain ordinances of the City of Chicago. Finally, defendant argues that the verdict was excessive. The plaintiff, in response, argues that the evidence clearly supports the judgment and that there was no prejudicial error in the conduct of the trial.

We affirm.

The relevant facts adduced at trial are as follows: At the time of the accident the plaintiff was employed as a driver by the United Parcel Service and was in the process of making a pickup at the loading dock of the defendant's plant. The plaintiff had been making similar stops at the defendant's plant for four or five months prior to the day of the accident. In making these pickups the plaintiff would back his truck up to the loading dock, go into the building, load the packages into his truck and depart. He testified that when he first began to make regular stops at the defendant's plant he attempted, on five or six occasions, to use the stairway that rose from the ground level 3 or 4 feet, to the level of the loading dock, but each time it was impossible because the door from the stairway was blocked by 55 gallon drums stacked on the dock at the top of the stairs. On these occasions he would step up onto the bumper of his truck, which was 1½ or 2 feet high, and then onto the loading dock. After a while this became his regular way of getting onto the dock.

On the date of the accident, November 2, 1964, the plaintiff had made

his pickup and was descending from the loading dock. He testified that in descending he placed his right foot on the bumper of his truck and then his left foot down to the ground. As he brought his right foot down and placed it on some "white mud" that covered the surface of the driveway, it slipped and slid out from under him. He fell to the ground and sustained a fracture of the right ankle.

The plaintiff further testified that on the day of the accident there had been light rain falling for most of the day. He noticed that the driveway was covered by an area, about 8 feet in diameter, of white, concrete powder-like material. The material was in the shape of a half-moon coming out from the wall of the plant near a drain spout. This substance combined with other material on the driveway to form what he characterized as "white mud." It was very slippery. During previous stops at the defendant's plant he had noticed the white substance on the wall of the building. He had also noticed liquid coming from the drain spout on the wall of the plant even on days when it was not raining. However, he did not see any emissions coming from the drain spout on the day of the accident.

The plaintiff also identified plaintiff's exhibit 5 as the shoe he wore the day of the accident. When he left home on that day the shoe was clean, and prior to arriving at defendant's plant the shoe had no material on it. The material on the shoe was, he testified, generally the material that was on the ground at defendant's plant.

Dr. William Colburn, called as an expert witness, testified that he was a chemist and licensed professional engineer. He tested the material found on the plaintiff's shoe and found traces of sodium phosphate, a common constitutent of cleaning compounds, fatty material, vegetable oil and alkanolamide, another common ingredient used in cleaning compounds. There was no testimony elicited from Dr. Colburn regarding the properties of these various substances ( i.e. whether they were slippery when wet). He testified only to what he found on the plaintiff's shoe.

William Wallace testified that he was the plant manager for the defendant. He explained that the defendant manufactured chemicals which included insecticides, deodorants, deodorant fluids, powdered soap and cleaning compounds. He described in detail some of the manufacturing processes of the defendant and in particular a dust collection system in the south end of the building. This apparatus consisted of large fans which collected dust particles left as a result of the crushing of certain cleaning compounds and an exhaust duct that ascended the exterior of the south wall of the plant to the roof. A weather hood covered the exhaust duct, and a drain pipe ran down the south wall from the base of the duct. The drain pipe emptied onto the driveway of the loading dock

area where the plaintiff slipped. Wallace further testified that he had never seen white material on the south wall of the plant, and he had never seen an accumulation of white mud on the driveway of the south loading dock.

Clifford Lytle testified that he was the traffic manager for the defendant. He testified that on the day the plaintiff was injured there was nothing blocking the stairway adjoining the dock, nor had there been anything blocking the stairway from June to November, 1964. On cross-examination he testified that there was no mud on the driveway of the loading dock on the day of the accident. When shown a photo of the loading dock area he could not identify the white substance on the south wall of the plant.

William Washington testified that he was an employee of the defendant, and on the day of the accident he helped the plaintiff load his truck. He further testified that when they were done loading the truck, the plaintiff jumped off the loading dock and did not step down to the bumper of his truck as he had testified. On cross-examination Washington stated that the driveway on that day was covered with what looked like mud with a little white mixed in it. He also agreed that occasionally the white material could come down the drain pipe and accumulate on the ground.

Daniel Green testified that he also was employed by the defendant on the day of the accident. He was walking by the loading dock and saw the plaintiff jump off the dock. He remembered there was mud on the driveway when he went to help the plaintiff, but couldn't remember whether it was white. It was slippery.

Dr. Melvin Post testified that he was the doctor that treated the plaintiff. As a result of the fall, the plaintiff suffered a trimalleolar fracture of the right ankle. After a closed reduction of the fracture was unsuccessful, he performed an open reduction. He removed some loose pieces of cartilage and positioned the bones with a steel screw. He stated that although there was a good result from this treatment, the ankle would not get better with advancing age, only worse. The plaintiff will always have some difficulty due to the injury.

After the foregoing evidence was adduced during the trial, the jury returned a verdict for the plaintiff in the amount of $30,000, and judgment was entered on the verdict. Subsequently, the defendant filed a post-trial motion, and the trial judge ordered a remittitur of $5,000 conditioned upon defendant tendering $25,000 to the plaintiff in satisfaction of the judgment. The defendant refused such tender and now asks for a reversal of the judgment.

■■ The standard to be applied in a judicial review where one party

seeks judgment as a matter of law notwithstanding an adverse jury verdict is stated in *Pedrick v. Peoria and Eastern R.R. Co.* (1967), 37 Ill.2d 494, 229 N.E.2d 504.

"In our judgment verdicts ought to be directed and judgments *n.o.v.* entered only in those cases in which all the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." 37 Ill.2d at 510.

Defendant first contends that the plaintiff was contributorily negligent as a matter of law and that therefore the judgment must be reversed. The defendant argues that the plaintiff did not exercise ordinary care for his own safety when he chose to descend from the loading dock in the way he did and that the plaintiff did not use the stairs provided by the defendant for that purpose. Defendant contends that when a plaintiff has available to him two different ways of proceeding, one known to be safe, and one known to involve certain possible hazards, if he chooses to follow the hazardous route, and is injured in the process, he is contributorily negligent as a matter of law. He cites the following cases in support of this position: *Geraghty v. Burr Oak Lanes, Inc.*, 2 Ill.App.2d 48, 118 N.E.2d 63; *Day v. Barber-Colman Co.* (1956), 10 Ill.App.2d 494, 135 N.E.2d 231; *Tompkins v. Twin Oaks Dairy, Inc.* (1968), 91 Ill.App.2d 88, 234 N.E.2d 403. This proposition, although appearing in these cases, has been specifically refuted by our Supreme Court.

■■ Both the *Day* case and the *Tompkins* case cite *Geraghty v. Burr Oak Lanes, Inc.* as authority for the proposition defendant contends is dispositive of this issue. However, the Supreme Court granted leave to appeal in the *Geraghty* case, and in *Geraghty v. Burr Oak Lanes, Inc.* (1955), 5 Ill.2d 153, 125 N.E.2d 47, the court in reversing the judgment for defendant entered by the appellate court, said: "We therefore conclude that whether plaintiff had a choice of routes and, if he had, whether he chose a safe route * * * were all questions of fact which the circuit court properly submitted to the jury for decision." (5 Ill. at 162.) For a similar statement of the rule see, *Larson v. Tri-City Electric Service Co.* (7th Cir. 1943), 132 F.2d 693. We note, it should be remembered, that plaintiff testified that on previous occasions he had found the stairway blocked by 55 gallon drums stacked on the dock at the top of the stairs.

■■ The correct standard to be used "in determining when questions of negligence and contributory negligence become questions of law, * * *" (*Pedrick v. Peoria and Eastern R.R.Co.* (1967), 37 Ill.2d 494, 229 N.E.2d 504, at 510), is that formulated in *Pedrick*. In that opinion the Supreme Court discussed the standards that had been used to determine contribu-

tory negligence as a matter of law and concluded that neither was entirely satisfactory. The opinion then pronounces the oft-quoted rule which we have set out above. In the instant case there was some evidence which inferred contributory negligence on the part of the plaintiff. However, when all the evidence is viewed in its aspect most favorable to the plaintiff, we cannot say that it so overwhelmingly favors the defendant that no contrary verdict could ever stand. In other words, we cannot say the plaintiff was guilty of contributory negligence as a matter of law. That issue was properly submitted to the jury as the triers of fact.

■■ The defendant next contends that there is no evidence in the record that it failed to exercise due care to keep its premises reasonably safe for the plaintiff's use. We disagree. There was certainly evidence adduced during the trial that, if believed by the jury, inferred that the defendant allowed a slippery white substance to remain on the driveway of the loading dock. From the witnesses' descriptions of this substance, it is clear that it was not a natural element usually found on such driveways. The defendant admittedly manufactured various household cleaning products, including powdered soap and cleaning compounds, and there was testimony from one of the defendant's witnesses that occasionally a white material came down the drain pipe and accumulated on the ground. The plaintiff testified that he had seen liquid flowing from the drain pipe on prior occasions. One of the defendant's employees testified that he had seen a similar substance on the wall of the plant near the drain pipe.

■■ The plaintiff was a business invitee and was owed the duty of ordinary care to keep the premises reasonably safe for his use. (*Olinger v. Great Atlantic and Pacific Tea Co.* (1961), 21 Ill.2d 469, 173 N.E.2d 443.) The above evidence was sufficient to allow the jury to conclude that the defendant breached that duty.

■■ The defendant also argues that there was no competent evidence that the "white powder" on the driveway was the proximate cause of the plaintiff's injury. We disagree. The plaintiff and Washington testified to the presence of the grayish-white substance on the driveway, and the plaintiff and Green testified that the driveway was slippery. This, together with the plaintiff's direct testimony that the white substance caused his fall, is certainly competent evidence of the proximate cause of the injury. Admittedly, there was contradictory testimony, but the matter of the credibility of the witnesses is for the triers of fact to determine.

The authorities cited by the defendant in support of its argument

that there was no competent evidence of proximate cause are not analogous to our case. In *Dixon v. Hart* (1951), 344 Ill.App. 432, 101 N.E.2d 282, the plaintiff alleged she slipped and fell on the floor of defendant's store, but offered no evidence as to the cause of the accident other than that the floor had been recently waxed. In *McInturff v. Chicago Title & Trust Co.* (1968), 102 Ill.App.2d 39, 243 N.E.2d 657, a wrongful death action, the deceased, a janitor, apparently fell down a stairway in the building he was employed to maintain.

■■ The instant case is more similar to those cases where the plaintiffs slipped and fell on a foreign substance found on the defendants' floor. In *Olinger v. Great Atlantic & Pacific Tea Co.* (1961), 21 Ill.2d 469, 173 N.E.2d 443, the court stated the general rule in such cases to be "[W]here a business invitee is injured by slipping on a foreign substance on the defendant's premises, and there is evidence tending to show that the substance was on the floor through the acts of defendant or his servants, the issue of negligence will be submitted to the jury." 21 Ill.2d at 474.

■■ The trial court was correct in submitting the issue of defendant's due care and the issue of proximate cause to the jury.

. The defendant next contends that he was severely prejudiced by the ruling of the trial judge which allowed into evidence, over defendant's objection, the shoe allegedly worn by the plaintiff on the day of the accident. During the direct examination of the plaintiff, he identified exhibit 5 as the shoe he wore the day he was injured. He stated it was clean when he left home that morning, and prior to his arrival at defendant's plant. The material on the shoe was generally the material that was on the driveway at defendant's plant. He also testified that the shoe was in the same condition then as it was when it was removed from his foot at the hospital following the accident.

The defendant states that there was no foundation testimony showing the whereabouts of the shoe for the 5 year period between the accident and trial and that for this reason the shoe should not have been admitted.

■■ We have examined the cases cited by the parties and can only conclude that the trial judge has wide discretion in determining whether proper foundation has been laid for the acceptance of some piece of physical evidence. We note that there is no suggestion in this case that the exhibit was left in an open, unattended place for a period of time, as was the situation in most of the cases cited by the defendant where the exhibit was not allowed into evidence. After careful consideration, we conclude that the trial judge did not abuse his discretion in allowing

the shoe to be placed in evidence. *Johnson v. Pennsylvania R.R. Co.* (1958), 17 Ill.App.2d 508, 151 N.E.2d 125; *Cribbs v. Daily* (1966), 67 Ill.App.2d 441, 214 N.E.2d 588.

■■ The defendant next contends that the trial court erred in denying its motion to take a discovery deposition of Dr. William Colburn, an expert witness called by the plaintiff. While this cause of action was pending, both parties made use of discovery procedures. The name of Dr. Colburn was not known to the defendant prior to trial because he was not engaged by the plaintiff until after the trial began. When he was called as a witness, the defendant objected and asked for a delay in order to depose the witness. The defendant's objection was overruled when it could not cite any authority in support of its position. Dr. Colburn's testimony continued, and he described the tests he made on the material he took from plaintiff's shoe and the results of those tests. He did not describe the properties of these various substances.

Defendant argues that the decision of the trial judge did violence to spirit and intent of cases such as *Monier v. Chamberlain* (1966), 35 Ill.2d 351, 221 N.E.2d 410, in that the plaintiff was allowed to circumvent the objective of "educating the parties in advance of trial as to the real value of their claims and defenses" by waiting until the last minute to employ his expert.

The plaintiff responds that he did not violate any Supreme Court rule nor any discovery order entered during the pendency of this action. The plaintiff also correctly contends that he was under no duty to keep the defendant informed of new witnesses after interrogatories had been filed. *Dickeson v. Baltimore & Ohio Chicago Terminal R.R. Co.* (1965), 73 Ill.App.2d 5, 220 N.E.2d 43.

■■ The question of whether a witness, previously unknown to the adverse party, should be allowed to testify is a matter for the trial court's discretion. There is precedent to the effect that when one party is surprised by the calling of a witness whose name and address were withheld from the adverse party (*Hansel v. Freimann* (1962), 38 Ill.App.2d 259, 187 N.E.2d 97) or when improper information about the witness' whereabouts has been given to the adverse party (*Rosales v. Marquez* (1965), 55 Ill.App.2d 203, 204 N.E.2d 829), the trial court may exclude the witness or allow the surprised party to interview the witness before he testifies. However, this is not the case here because Colburn's name was not withheld from the defendant during discovery.

■■ The case of *Dickeson v. Baltimore & Ohio Chicago Terminal R.R. Co.* (1965), 73 Ill.App.2d 5, 220 N.E.2d 43, is more similar to the facts in our case. In that personal injury action, an expert witness was employed by the plaintiff shortly before trial began and well after the time when replies to interrogatories were filed. When called as a witness

during trial, the expert was allowed to testify even though the defendant had not previously known of his existence. On appeal the court held first, that there was no duty on the plaintiff to keep the defendant informed of new witnesses after interrogatories had been filed and second, that the trial judge did not abuse his discretion in allowing the witness to testify, because the defendant was arguably on notice that the plaintiff may have called an expert, and the defendant did nothing to meet that line of argument except to object to the witness when he was called.

■■ In the instant case Dr. Colburn was not employed until after the trial had begun and therefore was not named in previously filed interrogatories. Although the expert, Dr. Colburn, did not testify as to the cause of the accident, the defendant in this case was, due to the allegations in the complaint and the plaintiff's direct testimony, at least arguably on notice that the plaintiff would try to show that emissions from the defendant's plant were related to the plaintiff's injury. Further, in this case the defendant was not denied the right to call its own expert chemist. Wallace, the plant manager, testified that the defendant employed a chemist and that he was readily available to them to testify. In view of these facts, we are convinced that the trial judge did not abuse his discretion in allowing Dr. Colburn to testify.

The defendant raised two further points in its brief but agreed to waive these points during oral argument before this court. Therefore, it will not be necessary for us to decide whether the trial court erred in restricting defendant's cross-examination of the plaintiff and whether the court erred in excluding evidence as to the defendant's compliance with certain ordinances of the City of Chicago.

Finally, the defendant contends that the verdict is excessive. After hearing all the evidence in regard to the type of fracture suffered by the plaintiff, the prognosis, his projected life expectancy, the fact that he was then employed as a mail carrier, the fact that he incurred a doctor's bill of $250, a hospital bill of $548.40, miscellaneous x-ray bills of $59.50, and loss of income from the date of the accident through April, 1965, the jury returned a verdict for the plaintiff in the amount of $30,000. Later, the trial judge entered a remittitur of $5,000 contingent upon the defendant's acceptance of a $25,000 judgment. These factors, the defendant contends, show that the verdict was excessive.

■■ The remittitur entered by the trial judge in this case, although somewhat unusual in that it was conditioned upon the defendant's tender of the reduced amount to the plaintiff, rather than the plaintiff's acceptance of the reduced verdict, does not indicate that the verdict was excessive. The fact that there was a remittitur does not establish the fact that the verdict was the result of passion and prejudice. *Gleason v. Cunningham* (1942), 316 Ill.App. 286, 44 N.E.2d 940.

██ The question of excessiveness turns on "whether or not the total amount of the verdict falls within the necessarily flexible limits of the fair and reasonable compensation or is so large as to shock the judicial conscience." (*Barango v. Hedstrom Coal Co.* (1956), 12 Ill.App.2d 118, 138 N.E.2d 829.) The verdict in this case is not so large as to indicate it was the result of prejudice or passion on the part of the jury and, therefore, will not be disturbed. (*Ford v. Friel* (1947), 330 Ill.App. 136, 70 N.E.2d 626.) The judgment against the defendant in the amount of $30,000 is affirmed.

Judgment affirmed.

SCHWARTZ and McNAMARA, JJ., concur.