Nick Karris, Plaintiff-Appellee, v. Norman Goldman, Administrator of the Estate of Nicholas George Michale, a/k/a Nick Michale, Deceased, Defendant-Appellant.

Gen. No. 52,712.

First District, Fourth Division.

December 17, 1969.

Vogel & Vogel, of Chicago (Robert C. Vogel and Robert Guritz, of counsel), for appellant.

Leonard M. Ring, of Chicago, for appellee.

MR. JUSTICE STAMOS delivered the opinion of the court.

Plaintiff brought an action for personal injuries under the provisions of the Structural Work Act (Ill Rev Stats, c 48, §§ 60–69 (1957)). Nick Michale, the general contractor, was originally named as a defendant but on February 14, 1967, his death was suggested and Norman Goldman, Administrator, was substituted as the defendant.

Plaintiff recovered a verdict of $50,000. Defendant appeals contending:

> (1) that the court erred in not directing a verdict for defendant and in refusing to grant defendants' motion for a judgment notwithstanding the verdict since the evidence failed to establish a cause of action under the Structural Work Act; and
>
> (2) that the court erred in admitting into evidence the testimony of a witness whose identity was not furnished in plaintiff's answers to interrogatories.

EVIDENCE

James Shwatal, witness on behalf of plaintiff, testified to the facts of the accident. Plaintiff was employed during the summer as a bricklayer's helper for a subcontractor at the time of the occurrence. Shwatal was also employed by the same subcontractor as plaintiff and they were engaged on June 4, 1959, in supplying

brick and mortar to bricklayers who were erecting the walls of the structure. A scaffold was set up along the outer length of the wall for a distance of approximately fifty-five feet. The scaffold consisted of a series of tubular steel supports upon which wooden planks were laid. The planks were approximately a foot wide, twelve feet long and two inches thick. The scaffolding was arranged to provide two working levels or tiers. The lower level was five to six feet above the ground and consisted of five planks. The upper level was two to two and one-half feet higher than the first level and consisted of three planks.

Shwatal worked on the ground level and passed up bricks and mortar to plaintiff who worked on the lower tier and in turn would pass up the bricks and mortar to the upper tier to the bricklayers who were engaged in building the wall. Shwatal would lift a shovelful of mortar from a source at ground level and deposit it on a mortar plate situated on the lower level or tier and plaintiff would then scoop off mortar with his shovel from the mortar plate to a mortar plate on the upper tier or level. In the process of lifting a shovelful of mortar, plaintiff stepped on the mortar plate from which he was removing mortar and the plate tipped causing him to fall to the ground and sustain injuries. The mortar plate was made of flexible steel about three feet square and weighed from twenty to thirty pounds. Plaintiff stepped on that portion of the mortar plate which was overhanging the edge of the outermost plank of the platform by approximately eight inches.

It is noted that the upper level consisted of three planks, with the innermost next to the wall of the building and that the lower level consisted of five planks, with the innermost likewise next to the wall. Thus, the lower level, extended beyond the one above by a distance equal to the width of two planks or about two feet. It was on this extended portion of the lower level

where the mortar plate was situated and where plaintiff worked.

Plaintiff's wife, mother, brother and sister all testified to his general good health before the occurrence and his subsequent manifestation of epilepsy and injury to his shoulder. There also was testimony that plaintiff was a law student at the time of the accident and had later passed the bar examination. Plaintiff was barred from testifying by reason of the death of Nicholas Michale.

Defendant did not adduce any evidence, but rested after plaintiff's case.

OPINION

Defendant initially contends that plaintiff does not have a cause of action under the Act and argues that there is no evidence that the scaffold was unsafe in its construction or erection, but was eminently sturdy. Defendant also argues that the placing of ordinary tools and equipment upon a stationary platform cannot logically or semantically be construed to constitute an operation of the scaffold, especially where tools and implements, as here, a mortar plate, are placed upon an otherwise sound and sturdy scaffold.

In support of his contention, defendant cites Spiezio v. Commonwealth Edison Co., 91 Ill App2d 392, 235 NE2d 323 (1968) and Thon v. Johnson, 30 Ill App2d 317, 174 NE2d 400 (1961).

In Spiezio the court held that a steel column, which was a permanent part of the structure under the circumstances of that case, was by custom and use intended to be used as a scaffold, support or mechanical contrivance within paragraph 60 of the Act.

In Thon the court held that a cement form upon which plaintiff stood could not be considered to be a scaffold.

We fail to see the applicability of these cases to the instant case.

In Schultz v. Ericsson, 264 Ill 156, 106 NE 236 (1914) the evidence revealed that a runway used by laborers to move their wheelbarrows was permitted to become cluttered with piles of bricks so as to narrow the passageway so that as the wheelbarrows were pushed and came abreast of each other, only three inches or so remained between them. There the plaintiff's wheelbarrow had a protruding wire that became entangled in the wheelbarrow being propelled in the opposite direction and caused the plaintiff to lose his balance and fall.

The court in that case, at pages 167–168 said:

"Under these facts and circumstances as proven it might be fairly and reasonably have been found by the jury that the scaffold or runway on which appellee was required to work was permitted to become unsafe and of insufficient width to afford adequate protection to the men at work thereon, and that such condition was the proximate cause of appellee's injury."

At page 165 the court said:

". . . and the employer cannot escape liability for a willful violation of the statute where he constructs an insufficient, unsafe and dangerous scaffold. . . ."

██ ██ The obvious purpose of furnishing scaffolding was to provide platforms upon which plaintiff and his coworkers could engage in their work and to place thereupon equipment that was necessary in the performance of their assigned tasks. The sole test or criterion with which to determine whether the scaffold complies with the Act is not limited to its sturdiness or structural integrity, but it must also be of a size or dimension suitable for the anticipated equipment, tools

or devices that are required to be placed thereon for the use of the workmen pursuing their assigned tasks.

It was a proper jury question to resolve whether the makeup of the platform and its dimension were sufficient and safe enough to accommodate plaintiff and the requisite equipment, and to provide sufficient space upon which plaintiff was to perform his task of shoveling. The jury could find, for instance, that the use of the mortar plate, which was 3 ft. square and weighed between 20 to 30 pounds with a portion thereof overhanging the outermost part of the scaffold, caused the scaffold to become insufficient, unsafe and dangerous.

We, therefore, hold that plaintiff had a cause of action within the provisions of the Act and the court properly denied defendant's motions for a directed verdict and for judgment notwithstanding the verdict.

Defendant also contends that the testimony of the witness, Dr. Ellen Anderson should have been excluded, because her identity was not made known in plaintiff's answers to interrogatories.

Plaintiff had advised defendant on January 30, 1967, in answers to interrogatories, that Dr. Frederic Gibbs would be a witness in behalf of plaintiff. At the time of trial however, Dr. Gibbs was out of the city and not available to testify, so Dr. Anderson, Dr. Gibbs' partner and associate in the operation of an electroencephalographic laboratory, was permitted to testify to a test administered to plaintiff under Dr. Anderson's direction and supervision on February 28, 1967.

Dr. Anderson expressed an opinion that the tracings from the test showed manifestations of an abnormality, in that the brain waves were coming off at a different irregular rate than it is normally expected. The referring physician, Dr. Boshes, was advised that the test reflected an abnormal function of the brain of a type that can be epileptiform. Dr. Anderson also testified

that plaintiff's condition could last the rest of his life, but there could be improvement, but the witness was not sure.

Defendant's interrogatories specifically requested the names and addresses of doctors who treated plaintiff. Dr. Anderson did not treat plaintiff, any more than a medical laboratory which responds to the treating physician's request for examination and analysis of blood, urine or other specimens.

The case of Rosales v. Marquez, 55 Ill App2d 203, 204 NE2d 829 (1965), relied upon by defendant involved different facts from those of the case at bar. Plaintiff in that case on two separate occasions failed to answer interrogatories in violation of an order of court directing him to do so. In addition, the excluded witness was living within the city of Chicago rather than in Mexico as plaintiff related in his deposition.

Dr. Anderson's first contact with plaintiff occurred a month after the answers were filed to the interrogatories. Supreme Court Rule 213(e) provides:

> "If a party makes an answer that is complete when made, he has no duty to supplement the answer to include information thereafter received, unless requested to do so by a timely supplemental interrogatory. . . ."

No such request was made by defendant.

█ Nevertheless, we have examined the record to determine whether any harm has been done to defendant's case. Rosales, supra.

Dr. Louis D. Boshes, whose practice is limited to neurology and psychiatry, testified on behalf of plaintiff that he initially saw plaintiff on October 1, 1963, when he sought to be managed for symptoms and to seek treatment for his epilepsy. Plaintiff advised him that he incurred a shoulder injury that was worsened

91

by his seizures, having landed on his head and shoulder when he fell from the scaffold. Plaintiff consulted an orthopedic physician, who also testified on behalf of plaintiff, and administered treatment and performed surgery to plaintiff's shoulder.

From plaintiff's initial visit to Dr. Boshes on October 1, 1963, to the time of trial on June 20, 1967, plaintiff had been treated for epilepsy. Dr. Boshes related that in his opinion there was a causal connection between plaintiff's condition of grand mal epilepsy and the injury he sustained when he fell from the scaffold, but could not express an opinion as to whether the condition would continue, but that it was serious.

On February 28, 1967, Dr. Boshes arranged for plaintiff to have an electroencephalogram taken in the laboratory of Dr. Gibbs and Dr. Anderson. Dr. Boshes testified that this test is used in connection with epilepsy cases and is for diagnostic reasons and to determine whether or not there is an improvement.

It was apparent that Dr. Boshes relied upon his own personal examination and tests to ascertain plaintiff's affliction and its severity; this diagnosis and attendant treatment was administered to plaintiff three and one-half years before the time of the test testified to by Dr. Anderson. Dr. Anderson's testimony was cumulative and the results of the electroencephalogram made on February 28, 1967, were corroborative of Dr. Boshes' clinical diagnosis.

We find the trial court did not abuse its discretion in permitting Dr. Anderson to testify.

Defendant raised the issue of excessive damages in its reply brief and argued that "while the verdict rendered was not of astounding proportions, it cannot be denied that a $50,000.00 award to a successful young lawyer, whose professional and social interests have not suffered, is excessive in law." However, defendant did

not allude to any evidence from which we can find that the verdict was excessive.

We affirm the judgment.

Judgment affirmed.

DRUCKER, P. J. and LEIGHTON, J., concur.