CHARLES ROBERT BUCK, a Minor, by Timothy C. Buck, his Father and Next Friend, Plaintiff-Appellant, v. ALTON MEMORIAL HOSPITAL et al., Defendants-Appellees.

Fifth District   No. 79-116

Opinion filed July 9, 1980.

348

HARRISON, J., dissenting.

A. Alan Hart, of Alton, for appellant.

Michael B. Constance, of Donovan, Hatch & Constance, of Belleville, for appellees Donald E. Hardbeck and Frank A. Morrison.

Mr. PRESIDING JUSTICE JONES delivered the opinion of the court:

Plaintiff Charles Robert Buck, by his father and next friend, Timothy C. Buck, appeals from summary judgment in the circuit court of Madison County in favor of defendants, Doctors Donald E. Hardbeck and Frank A. Morrison and Alton Memorial Hospital, in accordance with section 57 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 57). Alton Memorial Hospital is not involved in this appeal. The issues on appeal are whether summary judgment was improper because (1) the motion therefor was not accompanied by affidavit; (2) the doctrine of *res ipsa loquitur* applies and precludes summary judgment; (3) the deposition testimony of plaintiff's medical expert established a genuine triable issue of fact regarding whether defendant doctors were negligent in their treatment of plaintiff and his mother prior to plaintiff's birth by cesarean section.

Plaintiff filed his initial complaint on July 9, 1973, alleging that he was

born by cesarean section on June 27, 1969, approximately 17 hours after his mother entered Alton Memorial Hospital, in labor and passing a meconium (yellow)-stained amniotic fluid from her vagina. Plaintiff alleged that the defendant physicians were negligent in failing to come to the mother's aid at the hospital until just prior to surgery, though the doctors were apprised of her situation by telephone by the nurses monitoring her. Plaintiff sought damages for chronic neurological disabilities and other injuries proximately caused by the alleged negligent ·conduct. These allegations were carried forward in plaintiff's final amended complaint which was ultimately filed on January 13, 1976, after several dismissals of the complaint.

On November 15, 1976, defendants filed a supplemental inter-rogatory requesting that plaintiff identify any expert witnesses he had re-tained to review the medical records in the case. Plaintiff responded on February 17, 1977, that he had not·yet retained any such witnesses but planned to in the near future and would promptly notify defendants of their names. Upon defendants' motion, the trial court ordered plaintiff to reveal the names of his expert witnesses to defendants on or before May 2, 1977, or face dismissal of his complaint. On May 19, 1977, plaintiff named Doctors Dodge, Pretsky, and DeVivo as his expert witnesses.

A discovery deposition of Dr. DeVivo was taken on October 12, 1977. Based upon clinical examination, Dr. DeVivo testified that plaintiff had suffered a chronic neurological disability, manifesting itself as weakness in his right arm and leg, a mild reduction in the awareness of vision in his right eye, a structural or anatomical defect on the left side of his brain, and a reduction in plaintiff's general fund of knowledge and intellect. This was all due, in Dr. DeVivo's opinion, to an episode of paranatal distress (distress "[i]mmediately surrounding the event of birth"), and more particularly a weak fetal heartbeat which resulted in an inadequate supply of blood and oxygen to plaintiff's body. However, because Dr. DeVivo had not reviewed any of the hospital records concerning plaintiff's birth, he was unable to render an opinion as to whether defendant doctors' failure to examine the mother more promptly was unreasonable. Dr. DeVivo also questioned his own qualifications to render an opinon as to management of the mother and infant during that time because obstetrics was not his "sub-specialty."

After Dr. DeVivo examined the hospital records, he was deposed again on June 27, 1978. He reiterated his earlier findings. He explained that the paranatal distress was indicated by the meconium-stained fluid leaking from the mother as she entered the hospital, and the hospital record's description of the infant at the time of delivery as limp and without respiration. He emphasized that the record showed that the fetus maintained an "adequate" heart rate throughout. Following a detailed

examination regarding the contents of the Alton hospital record in question, Dr. DeVivo declined to criticize the care provided by the hospital nursing staff, the decision to perform the cesarean section, or the manner in which it was performed. Dr. DeVivo was equivocal as to whether the leaking of meconium-stained fluid from the mother required an immediate cesarean section. In his opinion such staining did not preclude the possibility of a natural childbirth. He testified that if the child were delivered by cesarean section, all subsequent deliveries would also have to be by cesarean section, and he noted this was the mother's first pregnancy. He recognized, in addition, that the cesarean section procedure had some potential for complication. Accordingly, one might postpone decision on whether to perform cesarean section where the fetus did not lose heartbeat or movement, to see whether the progress of labor was inadequate to allow delivery. Dr. DeVivo testified another reason for performing cesarean section was a prolonged labor, and he noted the mother had not been in prolonged labor when she arrived at Alton Memorial Hospital.

Dr. DeVivo testified further that based on the hospital record he found nothing wrong with the decision to perform the cesarean section or the procedure followed. He found nothing to indicate that the treatment of the mother and fetus by doctors Hardbeck and Morrison was in any way less than adequate. He found no evidence that either doctor "may or could" have been guilty of any malpractice in this case. He was also of the opinion that the care provided by the hospital nurses and staff was acceptable.

Defendant hospital moved for summary judgment on August 8, 1978. The defendant physicians moved for summary judgment on August 11, 1978, on the grounds that Dr. DeVivo's deposition testimony failed to disclose that defendants had in any way deviated from the acceptable medical standards in 1969, the year of plaintiff's birth. The doctors' motion was not supported by affidavit but it did contain portions of the deposition testimony. Both motions were granted on November 8, 1978. Plaintiff then filed a motion for reconsideration of the summary judgment in favor of defendant physicians, but not as to defendant hospital. Plaintiff's motion was denied and this appeal followed as to defendant physicians only.

■■ Appellant first contends that summary judgment was improperly granted in favor of appellees because their motion was not supported by an affidavit. However, we find this claim to be without merit because of sections 57(2) and (3) of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, pars. 57(2), (3)):

"(2) For defendant. A defendant may, at any time, move *with or*

*without* supporting affidavits for a summary judgment in his favor as to all or any part of the relief sought against him.

(3) Procedure. The opposite party *may* prior to or at the time of the hearing on the motion file counteraffidavits. The judgment sought shall be rendered forthwith if the pleadings, *depositions*, and admissions on file, together with the *affidavits, if any*, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Emphasis added.)

Moreover, Supreme Court Rule 212(a)(4) provides that a discovery deposition can be used "for any purpose for which an affidavit may be used." (Ill. Rev. Stat. 1977, ch. 110A, par. 212(a)(4).) It is, therefore, settled that a motion for summary judgment can be supported solely by depositions. (*Breault v. Feigenholtz* (1973), 54 Ill. 2d 173, 296 N.E.2d 3; *Gagliardo v. Vodica* (1978), 58 Ill. App. 3d 1053, 1055, 374 N.E.2d 1302; *People ex rel. Scott v. Continental Can Co.* (1975), 28 Ill. App. 3d 1004, 1007, 329 N.E.2d 362.) There was accordingly no error in the trial court's summary judgment based on Dr. DeVivo's first deposition and his entire second deposition which appellees properly incorporated into their motion for summary judgment.

■■ Appellant next argues that the doctrine of *res ipsa loquitur* applies to the case at bar and precludes summary judgment for defendants. We note that reliance on this doctrine was not pleaded in plaintiff's final complaint or any of his other complaints, nor was it mentioned in plaintiff's motion for reconsideration of summary judgment. It does not appear that this argument was raised at any time in the trial court. In general, a new point or theory cannot be raised for the first time in a court of review where it could have been raised in the trial court. (*City of Chicago v. Wildman* (1909), 240 Ill. 215, 88 N.E. 559; *Consumers Petroleum Co. v. Flagler* (1941), 310 Ill. App. 241, 33 N.E.2d 751.) Had this contention been raised in the circuit court it could easily have been decided. Our supreme court has recently held that "in the pleading of a cause of action under the doctrine of *res ipsa loquitur*, reliance on the doctrine should be alleged." (*Walker v. Rumer* (1978), 72 Ill. 2d 495, 502, 381 N.E.2d 689, 691-92.) Here, plaintiff did not even allege facts which would entitle plaintiff to recovery under a *res ipsa loquitur* theory. We do not reach the merits of plaintiff's *res ipsa loquitur* claim, and we find no error in the trial court's failure to withhold summary judgment on that basis.

We proceed to the crucial issue of this appeal. Plaintiff-appellant contends that Dr. DeVivo's deposition testimony established that there were material issues of fact to be resolved by trial. Summary judgment should have been rendered only if the pleadings and depositions showed

there was no genuine issue as to any material fact and that defendants were entitled to judgment as a matter of law. Ill. Rev. Stat. 1977, ch. 110, par. 57(3).

This court's view of summary judgment is expressed in *Sanders v. Frost* (1969), 112 Ill. App. 2d 234, 238, 251 N.E.2d 105, 106, in pertinent part as follows:

> " 'The purpose of summary judgment proceedings is to determine whether there is any genuine triable issue of fact which must be passed upon. [Citation.] If the pleadings, discovery depositions and exhibits, present a genuine issue as to any material fact, summary judgment should not be granted. [Citation.] The right of the moving party to summary judgment must be free from doubt.' "

One element of a cause of action for medical malpractice is proof of the standard of care by which the defendant physician's conduct is to be measured. (*Chamness v. Odum* (1979), 80 Ill. App. 3d 98, 399 N.E.2d 238.) In a malpractice action a physician will be held responsible for injuries resulting from his want of reasonable care, skill and diligence in his practice. The plaintiff must prove by affirmative evidence that the defendant was unskillful or negligent and that his want of skill or care caused injury to the plaintiff. (*Sanders v. Frost.*) Generally plaintiff must show by expert testimony not only that injury occurred, but that such event does not ordinarily occur in the normal course of events without negligence. (*Sanders v. Frost.*) When more than one inference can be drawn from undisputed facts, a triable issue exists and summary judgment may not properly be granted. *Gordon v. Oak Park School District No. 97* (1974), 24 Ill. App. 3d 131, 320 N.E.2d 389.

We review the pleadings, Dr. DeVivo's discovery depositions, and the hospital record exhibits in light of the above authorities. Asked for his opinion of the care provided by defendants in this case, Dr. DeVivo testified as follows:

> "Q. Was there anything in the records that you have looked at to indicate that the cesarean section itself was in any way improperly performed?
>
> A. I find no evidence that it was improperly performed.
>
> * * *
>
> Q. Do you see anything in these records that would indicate that the treatment the mother and the fetus received from the Doctors Hardbeck and Morrison were in any way less than adequate?
>
> A. No.
>
> * * *
>
> Q. Doctor, do you have an opinion based upon a reasonable degree of medical certainty as to whether from your examination

of this child and from your review of the hospital records and the other knowledge you have of this case, whether Doctors Hardbeck and Morrison may or could have been guilty of any malpractice in this case?

A. I don't have any evidence of that on the basis of the information available to me."

Despite the foregoing testimony, plaintiff urges that Dr. DeVivo's testimony showed defendant doctors were negligent in failing to arrive at the hospital sooner and perform a more prompt cesarean section. Plaintiff cites the following testimony by Dr. DeVivo:

"* * * I think the only question that one might raise is why the physicians were not available to examine the mother on the night of the admission and when there seemed to be some apparent fetal distress as reflected in the meconium-stained amniotic fluid. One should distinguish between the types of hospitals that are available. My experience is limited to a tertiary care facility, where we constantly have physicians of full-time staff and house staff in constant attendance, and I suspect that's probably not the case at Alton Memorial Hospital. This may be very acceptable practice in a primary care facility such as Alton Memorial Hospital, for physicians to remain in contact with the nursing personnel as to the condition of any given patient at any point in time.

Q. What type of examination would the doctor have done if he had been in attendance when the woman came in with the leaking meconium-stained fluid?

A. I would presume he would have performed the same studies that he performed the next morning which ultimately led him to the decision to perform the cesarean section."

Plaintiff also notes Dr. DeVivo's response to the following question:

"Q. Would the fact that when the mother came into the hospital she was leaking some yellow liquid, I think that's correct, would that fact by itself indicate that a cesarean section should be performed immediately?

A. Well, that's a somewhat difficult question because I did review the record in detail with that question in mind, and as best as I can determine, that was ultimately the reason the cesarean section was performed, so if in fact they had arrived at the decision for performing the cesarean section the next morning because of apparent fetal distress and leaking of meconium-stained fluid, then I would presume that the same circumstances existed the evening before at the time the mother was admitted."

■■ We would have to ignore the remainder of Dr. DeVivo's testimony to find that the testimony urged by plaintiff leaves a genuine triable issue of

fact. We decline to do so. Dr. DeVivo characterizes the failure of the doctors to act more promptly as a matter "one might question." However, the remainder of his testimony leaves no doubt that he resolved that question in his own mind, and that he did not find the defendant doctors negligent on the basis of that delay. Moreover, even ignoring the rest of Dr. DeVivo's testimony, the testimony urged by defendant indicates at most that a matter of professional judgment was involved in that delay. Dr. DeVivo cited reasons why delay might have been appropriate. The mere fact that the doctors may have been mistaken in delaying the cesarean section is insufficient to present a genuine issue of fact for trial. (*Sanders v. Frost; Lawrence v. Rubio* (1980), 85 Ill. App. 3d 472, 406 N.E.2d 946.) The fact remains that Dr. DeVivo would not find defendant doctors negligent on the basis of that delay, and that plaintiff presented no expert witness who would do so. We find no triable issue here.

Plaintiff urges, without argument, that this court reverse summary judgment in view of his motion for reconsideration, which the trial court denied. Defendants' motion for summary judgment was argued in the trial court October 4, 1978, and granted November 8, 1978. On December 8, 1978, plaintiff's attorney filed the motion for reconsideration, stating in part that the attorney had additional evidence that defendant doctors' failure to examine the fetus on the night before the cesarean section was negligent. Accompanying the motion for reconsideration was an affidavit by plaintiff's attorney in which he stated:

> "[U]pon a telephone conversation with Dr. Darryl DeVivo on the evening of November 7, 1978, I was advised and informed as to various statements under discovery deposition that Dr. DeVivo could and would make that would be a material bearing on this cause and would establish Dr. DeVivo's opinion of negligence in the Defendants, DONALD E. HARDBECK and FRANK A MORRISON, and I further say that the above information was not available prior to the said date and has not been offered prior hereto through any negligence or delay on the part of Plaintiff or his counsel."

On December 15, plaintiff's attorney appeared and requested admission of unspecified new evidence which he "propose[d] to submit" in support of his reconsideration motion. The trial court allowed the request. On December 20, plaintiff's attorney filed a motion for continuance in which he alleged Dr. DeVivo would not be able to give additional testimony prior to December 22, the date set for hearing on the motion for reconsideration. No date was specified on which the testimony would be forthcoming, nor was the nature of the expected testimony set forth. No specific length of continuance was sought, plaintiff's attorney merely

seeking continuance "for such time as would be necessary to afford additional deposition." On December 22, 1978, after argument, the trial court, "considering the matters presented before it this date, the facts as originally presented in the motion for summary judgment in this case, and considering the fact that this cause has been on file since July, 1973," denied both the motion for continuance and the motion for reconsideration.

■ Generally, the matter of allowing a case to be opened for taking further evidence rests in the sound discretion of the trial court, and courts of review will not interfere except where that discretion is abused. (*Forest Preserve District of Cook County v. Lehmann Estate, Inc.* (1944), 388 Ill. 416, 58 N.E.2d 538; *Crothers v. La Salle Institute* (1977), 68 Ill. 2d 399, 370 N.E.2d 213.) In view of plaintiff's consistent inability to present a triable issue of fact in this case, and the lack of specificity on plaintiff's part as to the nature of the evidence forthcoming and the time it would be presented, we conclude the discretion of the trial court was not abused. The trial court did not err in finally disposing of this action. We affirm summary judgment in favor of defendants.

Affirmed.

KARNS, J., concurs.

Mr. JUSTICE HARRISON, dissenting:

I respectfully dissent from the opinion of the majority.

I believe that genuine issues of material facts still remain to be decided in this case. Appellant in his amended complaint alleged among the following negligent acts by appellees:

"a) That the said Defendants, or either of them, failed to appear and conduct a proper examination of the patient in the early stage of labor.

b) That the said Defendants, or either of them, failed to recognize dangers and complications evidenced by communications in reports of nurses aids, registered nurses and other personnel of the aforesaid hospital.

c) That the said Defendants, or either of them, failed to appear at the hospital and to take necessary steps to eliminate or reduce the possibility or probability of injuries to the fetus during labor period.

d) That the said defendants, or either of them, failed and committed unreasonable delay in diagnosing caesarian section as the necessary procedure in the delivery of the child.

❋ ❋ ❋

i) That the defendants failed to make proper diagnosis for the reasons and cause of delay of birth of the child."

Appellant cites portions of Dr. DeVivo's depositions which do establish controverted issues as to material facts.

As to the aforesaid alleged negligent acts, Dr. DeVivo testified as follows:

"A. No. I think the only question that one might raise is why the physicians were not available to examine the mother on the night of the admission and when there seemed to be some apparent fetal distress as reflected in the meconium-stained amniotic fluid. One should distinguish between the types of hospitals that are available. My experience is limited to a tertiary care facility, where we constantly have physicians of full-time staff and house staff in constant attendance, and I suspect that's probably not the case at Alton Memorial Hospital. This may be very acceptable practice in a primary care facility such as Alton Memorial Hospital, for physicians to remain in contact with the nursing personnel as to the condition of any given patient at any point in time.

Q. What type of examination would the doctor have done if he had been in attendance when the woman came in with the leaking meconium-stained fluid?

A. I would presume he might have performed the same studies that he performed the next morning which ultimately led him to the decision to perform the cesarean section."

Dr. DeVivo also testified that as best he could determine, the passage of the fluid was one of the reasons for ultimately deciding to perform a cesarean section over 17 hours later. He further testified that it would be important to know whether the infant's heart was continuously monitored, even though that was not the general policy in 1969, because "a slowing of the heart rate may have occurred resulting in a reduction in blood flow to the brain in the fetus producing the distress that was described and the resulting staining of the amniotic fluid." I believe that these portions of Dr. DeVivo's depositions clearly demonstrate that these issues remain in controversy in this case.

It should be noted that summary judgment is a drastic and extreme measure. It is not to be granted casually, but only when it is clear that no evidence exists which would present a jury question. While much of Dr. DeVivo's testimony was favorable to appellees, there still remain real questions as to whether appellees negligently failed to go to the hospital and examine Elizabeth Buck, to appreciate the extreme condition of both the mother and child, and to properly examine and treat them. Hence, appellant should be accorded his right to present these factual disputes to a jury for their resolution.

The ruling of the majority presents a matter of grave concern to me and one which the parties discuss by implication. It is one which this court apparently has not yet specifically addressed. It involves a matter of timing. More specifically, my concern centers around the point in time when a plaintiff must fulfill his burden of establishing every fact necessary to constitute his cause of action for medical malpractice.

We are here confronted with a case wherein appellant had a motion for summary judgment granted against him for failure to produce an expert witness who could establish the applicable medical standard of care to which appellees should be held and render an opinion, based on reasonable medical certainty, that they breached that standard. This motion was filed and granted during the course of discovery, which at that time had continued for approximately five years from the first date of filing a complaint. While this is the posture of the particular case at bar, the case could have presented itself had appellant failed to establish any element of his cause of action during the course of discovery, namely, the applicable standard of care, breach of that standard, breach as the proximate cause of his injury, and resultant damages.

It is well known that the scope of the Illinois discovery rules is broad. The wording of Supreme Court Rule 201(b) evidences this.

"(b) Scope of Discovery.

(1) Full Disclosure Required. Except as provided in these rules, a party may obtain by discovery full disclosure regarding any matter relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking disclosure or of any other party, including the existence, description, nature, custody, condition, and location of any documents or tangible things, and the identity and location of persons having knowledge of relevant facts. The word "documents," as used in these rules, includes, but is not limited to, papers, photographs, films, recordings, memoranda, books, records, accounts, and communications.

(2) Privilege and Work Product. All matters that are privileged against disclosure on the trial, including privileged communications between a party or his agent and the attorney for the party, are privileged against disclosure through any discovery procedure. Material prepared by or for a party in preparation for trial is subject to discovery only if it does not contain or disclose the theories, mental impressions, or litigation plans of the party's attorney. The court may apportion the cost involved in originally securing the discoverable material, including when appropriate a reasonable attorney's fee, in such manner as is just." (Ill. Rev. Stat. 1977, ch. 110A, par. 201(b)(1), (2).)

The discovery provisions of both the Supreme Court Rules and the Civil Practice Act were designed to enlarge the scope of available discovery to enhance the genuine function of the trial as a means of ascertaining truth and to provide expeditious methods for the just disposition of litigation. (*Stimpert v. Abdnour* (1962), 24 Ill. 2d 26, 31, 179 N.E.2d 602; *Bee Chemical Co. v. Service Coatings, Inc.* (1969), 116 Ill. App. 2d 217, 223, 253 N.E.2d 512; *Washburn v. Terminal R.R. Association* (1969), 114 Ill. App. 2d 95, 102, 252 N.E.2d 389.) These procedural tools were enacted to educate the parties in advance of trial as to the actual value of their claims and defenses in order to enable them to better prepare for trial. (*Monier v. Chamberlain* (1966), 35 Ill. 2d 351, 221 N.E.2d 410; *People ex rel. Terry v. Fisher* (1957), 12 Ill. 2d 231, 236, 145 N.E.2d 588; *Biehler v. White Metal Rolling and Stamping Corp.* (1975), 30 Ill. App. 3d 435, 441-42, 333 N.E.2d 716.) However, the discovery rules "were also intended to have the equally important purpose of fixing the guidelines for a fair and orderly procedure by which discovery may be accomplished." (*Bruske v. Arnold* (1968), 100 Ill. App. 2d 428, 433, 241 N.E.2d 191, *aff'd* (1970), 44 Ill. 2d 132, 254 N.E.2d 453, *cert. denied* (1970), 398 U.S. 905, 26 L. Ed. 2d 65, 90 S. Ct. 1697.) Therefore, discovery may not be used as a tactic to obstruct the trial process for such would violate the purpose of modern discovery principles. *Slatten v. City of Chicago* (1973), 12 Ill. App. 3d 808, 813, 299 N.E.2d 442.

Discovery depositions are taken mainly for eliciting information, committing witnesses to specific stories, and obtaining admissions from opposing parties rather than for gaining fully admissible testimony as in an evidence deposition. Supreme Court Rule 212 (Ill. Rev. Stat. 1977, ch. 110A, par. 212) clearly differentiates between these two deposition forms and there is no time limitation within which discovery must be completed. (*Slatten v. City of Chicago* (1973), 12 Ill. App. 3d 808, 811.) Therefore, acquisition of certain information vis-a-vis a discovery deposition lends itself to the discovery of facts and better preparation for trial but it is not a substitute for the actual trial wherein that same information is put to use in the disposition of issues which remain subject to resolution. (*Simaitis v. Thrash* (1960), 25 Ill. App. 2d 340, 348, 166 N.E.2d 306.) However, the procedure urged by appellees and adopted by the trial court and the majority attempts to convert the discovery deposition in a medical malpractice case into the equivalent of testimony given at trial with which the trier of fact can determine the ultimate outcome of the case—and this all prior to the occurrence of the actual trial through the use of summary judgment. This represents what I believe to be a gross misapprehension and application of summary judgment in a medical malpractice case.

The motion for summary judgment which was granted in the present

case was filed subsequent to two discovery depositions of Dr. DeVivo being taken. Dr. DeVivo was named as an expert witness on behalf of plaintiff approximately four years from the first filing of a complaint. I have already noted that there are issues of fact which remain to be decided in this case due to these depositions, although Dr. DeVivo failed to establish the requisite standard of care to be applied in this case and any breach thereof. Therefore, summary judgment was improperly granted. But even assuming that there were no controverted issues of material fact which resulted from Dr. DeVivo's testimony, I do not believe summary judgment would have been proper in this case.

It is generally agreed, unless the matter is within the ken of the layman, that expert medical testimony is necessary to establish the appropriate and acceptable medical standard of care. (*Borowski v. Von Solbrig* (1975), 60 Ill. 2d 418, 423; *Stevenson v. Nauton* (1979), 71 Ill. App. 3d 831, 834, 390 N.E.2d 53; *Crawford v. Anagnostopoulos* (1979), 69 Ill. App. 3d 954, 960, 387 N.E.2d 1064; *Carman v. Dippold* (1978), 63 Ill. App. 3d 419, 425; *Plost v. Louis A. Weiss Memorial Hospital* (1978), 62 Ill. App. 3d 253, 257, 378 N.E.2d 1176; *Schaefer v. Sippel* (1978), 58 Ill. App. 3d 816, 819, 374 N.E.2d 1092.) Since plaintiff must adduce affirmative evidence to establish each element of his case in order to prevail on his cause of action, it is settled that plaintiff has the burden of obtaining expert testimony sufficient to sustain his allegations. However, I do not believe a plaintiff has such a conclusive burden during the course of discovery and I would hold that a deposition of an expert witness indicating what the appropriate medical standard of care is and that the defendant doctor acted in accordance therewith, or that the expert cannot determine whether there was compliance with the applicable medical standard of care, should not automatically preclude the plaintiff on the ground of summary judgment from going to trial or at least from later obtaining an expert opinion which would establish this standard.

Several Illinois courts have addressed this problem in the past. In *Sanders v. Frost* (1969), 112 Ill. App. 2d 234, 251 N.E.2d 105, this court affirmed an order granting summary judgment in a medical malpractice case. At the time the trial court ruled on the motion it had before it the deposition of the defendants, Dr. Frost and Dr. Snow, and the deposition of Dr. Modert. Plaintiff had been under Dr. Frost's care for a staphylococcus infection in his throat in November 1962. On July 15, 1963, plaintiff suffered severe injuries after being struck by an automobile. Dr. Modert testified that a wire in plaintiff's pubic bone which was surgically inserted by the defendants in an operation performed on plaintiff after the accident was functioning as a foreign object in that the body defenses were setting up a reaction against this particular material, though it was the type of wire intended to be left in the body. Dr. Modert stated

that this wire had nothing to do with a staph infection discovered near the surgical incision in the pelvic area. The court stated that the plaintiff's allegations of the defendants' lack of skill in the care and treatment of plaintiff required more than common knowledge and experience and thus were not within the common comprehension of laymen. Therefore, since the plaintiff failed to indicate that he had an expert medical opinion to sustain the charges in his complaint that defendant negligently performed the operation while a staph infection was present, or that he would be able to obtain such an opinion in the future, this court concluded that summary judgment was proper. We cautioned trial courts on entering summary judgments in this type of case because of the difficulty in securing the testimonial services of one medical professional against another.

Similarly, the court in the wrongful death case of *Kwak v. St. Anthony De Padua Hospital* (1977), 54 Ill. App. 3d 719, 369 N.E.2d 1346, affirmed the trial court's grant of summary judgment in favor of defendant hospital where it was noted that the plaintiff's expert at deposition had no specific criticism of the treatment or care rendered by the hospital personnel during plaintiff's decedent relative's stay there. In fact, the court pointed out that the expert contradicted some of the allegations in plaintiff's complaint. Since "there was no *other* testimony that any such negligence was, as alleged by plaintiff, 'a causal factor' in bringing about the death of the decedent" (emphasis added), the court held that it was not error to grant summary judgment. 54 Ill. App. 3d 719, 727.

In *Hill v. Lutheran Hospital* (1978), 58 Ill. App. 3d 1003, 374 N.E.2d 1147, summary judgment was entered in favor of the defendant, Dr. Durkin, where the only expert opinion presented for consideration on the motion for summary judgment was an affidavit filed by defendant Durkin as a medical expert in support of his own motion. In affirming the decision of the trial court, the court stated that the plaintiff failed to indicate that he had or expected to obtain expert medical testimony. Based on this and the fact that plaintiff had been given extensive continuances and opportunities to obtain a medical expert, summary judgment was proper. The *Hill* court noted, however, citing *Sanders v. Frost*, that because of the reluctance of the medical profession to testify against a fellow member, trial courts should be extremely cautious in entering summary judgments in malpractice cases, and that "if there is any sound basis to do so, a trial court should reject summary judgment in this type of case." 58 Ill. App. 3d 1003, 1008.

The First District again faced this situation in *Stevenson v. Nauton*. In *Stevenson* the plaintiff alleged that she suffered lost vision in her left eye as the result of the negligence of the defendant Dr. Nauton. Plaintiff listed

nine physicians who had knowledge of her condition and treatment, but a discovery deposition of Dr. Atchoo, plaintiff's only listed expert witness who was an eye specialist, was taken by the defendant. Dr. Atchoo stated he could not form a definite opinion as to whether Dr. Nauton's treatment of the plaintiff fell below acceptable medical standards. Defendant subsequently moved for, and was granted, a summary judgment. On review, the court determined that the plaintiff had numerous opportunities to obtain an expert medical opinion to sustain her allegations, noting that approximately four years had elapsed between the commission of the alleged negligent acts and the granting of summary judgment. It added that there was no indication that plaintiff's expert could have formed a definite opinion at trial or that other experts could have been obtained to testify as to the proper standard of care against which the defendant should have been judged. (71 Ill. App. 3d 831, 836.) Therefore, the court held that summary judgment was properly granted.

A review of the case law from other jurisdictions indicates that the majority of states that have recognized and discussed the question have found summary judgment to be proper in these circumstances. In *Goodman v. Emergency Hospital* (Sup. Ct. 1978), 96 Misc. 2d 1116, 410 N.Y.S.2d 511, summary judgment was granted to the defendants because the plaintiff failed to produce a statement from any expert which would deny defendants' contention that their treatment was in accordance with standards in the professional community. Similarly an affidavit by the defendant doctor setting forth his qualifications and stating that there was no nexus between the injury complained of and his care of the plaintiff has been held sufficient to grant summary judgment. (*Jackson v. Tucker* (1968), 118 Ga. App. 693, 165 S.E.2d 466. Contra, *Brooks v. Serrano* (Fla. App. 1968), 209 So. 2d 279 (affidavit of defendant doctor that he performed his services skillfully and in accordance with accepted community standards held insufficient to warrant summary judgment in her favor); *Sanchez v. Wade* (Tex. Civ. App. 1974), 514 S.W.2d 812 (uncontradicted affidavit of defendant doctor held insufficient to show no genuine issue of material fact).) Most courts state the general rule that expert testimony is ordinarily required in a medical malpractice case and, in opposing a summary judgment motion, the plaintiff has the responsibility of presenting proof that he will be able to present evidence at trial that will demonstrate that the defendant doctors were negligent. *Pendleton v. Cilley* (1978), 118 Ariz. 84, 574 P.2d 1303; *Riedisser v. Nelson* (1975), 111 Ariz. 542, 534 P.2d 1052; *Morrell v. St. Luke's Medical Center* (1976), 27 Ariz. App. 486, 556 P.2d 334; *Abernethy v. Smith* (1972), 17 Ariz. App. 363, 498 P.2d 175; accord, *Thomas v. Berrios* (Fla. App. 1977), 348 So. 2d 905; accord, *Devine v. Queen's Medical Center* (1978), 59 Haw. 50, 574 P.2d 1352; accord, *Bowman v. Henard* (Tenn. 1977), 547 S.W.2d

527; *Swanson v. Brigham* (1977), 18 Wash. App. 647, 571 P.2d 217; *Shoberg v. Kelly* (1969), 1 Wash. App. 673, 463 P.2d 280. But see *Adamski v. Tacoma General Hospital* (1978), 20 Wash. App. 98, 579 P.2d 970 (summary judgment improper where defendants failed to put forward any proof of their exercise of due care within the appropriate medical standard but insisted that plaintiff produce a medical expert).

The general assumption underlying the Illinois and majority view is that the plaintiff has, at the time defendant moves for summary judgment, produced the most favorable expert witness he will be able to find. If he does not have an expert witness at that point in discovery, the courts are skeptical that he will be able to find one later. However, these courts are in effect telling the plaintiff that he cannot merely be diligent in searching for an expert to support his case, but that he must find one or be able to convince the court that he will be able to before the defendant moves for summary judgment, and that the expert witness will sustain his allegations, or else he will suffer dismissal. One can easily imagine, then, a plaintiff's attorney postponing the filing of a complaint in order to first search for an expert witness who is willing to testify, in effect conducting what was intended to be accomplished during discovery for fear that if he does not the defendant will move for summary judgment and the case will be dismissed because he will be unable to rebut an affidavit or deposition of the defendant doctor. This is not the result the broad rules of discovery were meant to accomplish. As discussed above, they were not enacted to require the parties to prove their case before trial, but to promote full disclosure of facts in order to narrow the litigation to the genuine issues of the case and thereby facilitate the fair, prompt, and inexpensive disposition of the lawsuit. I do not believe that a deposition or an affidavit of an expert witness indicating that the defendant doctor acted in accordance with the appropriate medical standards should automatically preclude the plaintiff from going to trial or at least from subsequently obtaining an expert opinion that will establish the requisite standard.

Summary action for failure to adduce expert testimony has been addressed in Illinois in the context of Supreme Court Rule 219(c) sanctions. (Ill. Rev. Stat. 1977, ch. 110A, par. 219(c).) That rule provides that the trial court may, on motion, enter any order that it determines is proper when a party unreasonably refuses to comply with a discovery provision of the Supreme Court Rules or any order of the court entered under those provisions. I believe the following case analysis involving sanctions for failure to identify and adduce expert testimony is beneficial for an understanding of my position with respect to the granting of summary judgment in similar situations.

In *Schaefer v. Sippel*, the plaintiff's case was dismissed pursuant to

Supreme Court Rule 219(c) for failure to disclose any expert witness, even though the plaintiff informed the court that he had not yet been able to engage any expert witnesses. The court held that the dismissal was improper for the following reasons:

"We can find no precedent for requiring that plaintiff be able to prove a prima facie case at the time a pretrial conference is held. As the court recently stated in the medical malpractice case of *Simpson v. Johnson* (1977), 45 Ill. App. 3d 789, 797, 360 N.E.2d 144, 150:

'Although we do not commend the practice, there is no rule prohibiting either party from first engaging an expert after the trial has commenced * * *.' (Emphasis added.)

While the *Simpson* court went on to indicate that, absent a good reason for employment of an expert at such a late date, the trial court should not permit him to testify, we believe the principle expressed in the foregoing excerpt to be applicable to the case at bar. Plaintiff had as of March 1 been unable to obtain an expert, but it is possible that he could have had such an expert by the time the trial of this cause occurred. Indeed, plaintiff could, as he indicated to the trial court, rely on the adverse testimony of the defendant doctors as an adequate means of providing the needed expert testimony. See *Casey v. Penn* (1977), 45 Ill. App. 3d 1068, 362 N.E.2d 1373; *Anderson v. Martzke* (1970), 131 Ill. App. 2d 61, 266 N.E.2d 137." 58 Ill. App. 3d 816, 820.

In *Treadwell v. Chiakmakis* (1978), 61 Ill. App. 3d 125, 377 N.E.2d 1164, the court was confronted with a case wherein it was disclosed at a pretrial conference that the defense counsel had informally contacted the two expert witnesses plaintiff listed in response to an interrogatory. These two experts apparently indicated to the defense attorney that they had never agreed to serve as experts and that they had no opinion as to defendant's negligence, after having allegedly agreed to testify for plaintiff. The trial court granted defendant's motion for summary judgment and refused to rescind a sanction order closing discovery. The appellate court criticized the granting of summary judgment, recognizing the real possibility that "[o]ften a witness is found during trial and the court may allow his testimony by giving the opponent an opportunity to take his deposition even during trial." (61 Ill. App. 3d 125, 129.) Therefore, summary judgment was improvidently granted because there was no deliberate refusal to comply with discovery and plaintiff was apparently surprised by her witness' unexpected refusal to testify.

In a thorough discussion, the court in *Plost v. Louis A. Weiss Memorial Hospital* held that an order limiting plaintiff to expert witnesses listed in answers to interrogatories was "improper because new witnesses

may be found during trial and can be used by giving the opposition an opportunity to depose the witness before he is called to testify, if it does not interfere with the trial." (62 Ill. App. 3d 253, 256.) This order was entered October 6, 1976, a few days before the scheduled trial on October 14 or 15, 1976, at which time it was disclosed that one of the four experts had died. On October 8, defendants filed motions to dismiss the cause for plaintiff's failure to produce an expert witness. Defendants argued that the other three listed expert witnesses had indicated in a letter to the trial court that they would not testify. Plaintiff's counsel indicated that he had learned of the death one day prior to the hearing and had attempted to contact the other three experts for the two months previous but without success. Therefore, plaintiff filed a motion for a 60-day continuance.

The First District Appellate Court was appreciative of plaintiff's dilemma, and after noting that this was a probable case for expert testimony, went on to state:

> "Proceeding to trial without an expert in a case where the facts of the injury are not such as to warrant the inference of due care to laymen means probable defeat. However, it is possible for a plaintiff to extract enough admissions from the defendant doctors, under section 60 cross-examination to meet the requirement of expert testimony and thereby make out a prima facie case." (62 Ill. App. 3d 253, 258.)

The court concluded that the denial of plaintiff's request for a continuance and the dismissal for want of prosecution denied plaintiff "his fundamental right to present his cause of action," for section 60 or cross-examination of defendant's experts might be "the most viable way to proceed for a plaintiff who has no willing medical expert." (62 Ill. App. 3d 253, 258.) The denial to plaintiff of the use of these methods due to discovery limitations was an abuse of discretion the court said; he should have the opportunity to search for an additional expert and should not be limited to those experts he listed in his answers to interrogatories.

A dismissal order was also the subject of a reversal in *Bell v. Board of Education of City of Chicago* (1979), 67 Ill. App. 3d 402, 385 N.E.2d 84. There a complaint alleged both the negligent striking of plaintiff with a stick as well as wilful and wanton conduct. Confused over whether the dismissal order granted summary judgment or involuntary dismissal pursuant to Supreme Court Rule 219(c), the court acknowledged the significance to the trial court of plaintiff's failure to obtain an expert witness (physician) to testify at trial. However, the court, relying on *Schaefer v. Sippel*, noted:

> "[While] failure to procure an expert in a case of this nature may prove detrimental to plaintiff we do not believe that the pretrial absence of an 'obtained' expert can be fatal to plaintiff's action.

Perhaps plaintiff could continue to construct his prima facie case until trial commenced. There is a possibility of obtaining an expert by the time the trial of the cause occurs. We find no reason for compelling plaintiff to reflect an ability to prove his case prior to trial." (67 Ill. App. 3d 402, 404-05.)

Therefore, the trial court improperly dismissed plaintiff's case, whatever its grounds. Summary judgment could not be used to deny plaintiff's aforesaid fundamental right to present a cause of action where a material dispute may exist, nor would a Rule 219(c) dismissal be proper, since it would act as a punishment rather than an order insuring both discovery and a trial on the merits. 67 Ill. App. 3d 402, 405.

Most recently, the Second District reviewed this dilemma in *Mendelson v. Feingold* (1979), 69 Ill. App. 3d 227, 387 N.E.2d 363. In that case plaintiff's complaint was dismissed as a sanction for allegedly failing to abide by the trial court's discovery order which essentially required that plaintiff engage a medical expert, submit to his examination, furnish defendants with his medical report and also obtain a detailed medical report setting forth the expected content of the expert's testimony, his opinion regarding the negligence of defendant and the basis for that opinion. The case was dismissed pursuant to Supreme Court Rule 219(c) even though plaintiff complied with the order. The court discussed *Schaefer v. Sippel* and noted that the plaintiff in the case before it had been prevented by dilatory tactics from deposing either defendant or two other treating physicians.

"The effect of the series of orders entered by the trial court was to require plaintiffs to obtain a medical expert witness who would state in writing that defendant was negligent in his treatment of Mr. Mendelson before plaintiffs would be allowed to proceed with their own discovery. Such orders are without authority under the discovery rules and the Civil Practice Act and effectively precluded the plaintiffs from establishing any part of the expert testimony which might be required in the trial of this case through testimony of defendant or the treating physicians. See *Plost v. Louis Weiss Memorial Hospital* (1978), 62 Ill. App. 3d 253, 378 N.E.2d 1176." (69 Ill. App. 3d 227, 234.)

The court rejected any suggestion that "the plaintiff in a malpractice action must establish at the discovery stage that he will be able to sustain the allegations of the complaint at trial." (69 Ill. App. 3d 227, 235.) It finally concluded that while the granting of summary judgment was not before it "that had the court granted summary judgment without first permitting plaintiff to depose defendant and the two treating physicians such judgment would necessarily be set aside as erroneous." 69 Ill. App. 3d 227, 235.

While these cases are not strictly controlling because their principal consideration is not a summary judgment entered pursuant to section 57 of the Civil Practice Act, the reasoning developed by these courts is persuasive in addressing the question of whether a plaintiff must produce an expert witness who will sustain his allegations prior to trial. These cases correctly note that a party is not required to establish a prima facie case at any pretrial stage. Discovery is for discovering matters relevant to the case; trial is for the trying of that entire case. As in most medical malpractice cases, this particular case is one which calls for expert testimony. Any plaintiff in such a cause of action has numerous options by which to establish this case. An expert witness who will give testimony can be utilized. If no such witness can be found prior to trial, plaintiff may establish the necessary elements to sustain his cause of action by cross-examining the defendants or by using section 60 of the Civil Practice Act. (Ill. Rev. Stat. 1977, ch. 110, par. 60.) And at any time, either prior to or during trial, plaintiff may locate an expert witness who would be willing to testify. These alternatives reflect recognized procedures for proving one's case at trial, and that is the only place the case need be sustained.

I recognize, of course, the existence and utility of summary judgment. Its function, as noted above, is to grant judgment when no facts are disputed or could be disputed by a jury, and where the moving party is clearly entitled to judgment as a matter of law. Summary judgment was granted here apparently because the trial court believed that Dr. DeVivo's deposition testimony did not establish the requisite standard of medical care, defendant's breach thereof, or present any other disputable facts. However, there do remain issues as to material facts in this case. And even if, as a result of Dr. DeVivo's testimony, there did not, I do not believe that summary judgment would have been proper under the circumstances of this case.

Those cases discussed above wherein summary judgment was granted, *i.e., Sanders v. Frost, Kwak v. St. Anthony DePadua Hospital, Hill v. Lutheran Hospital* and *Stevenson v. Nauton,* all had one important factor missing which is present in the case at bar. All of those cases discussed the fact that not only did the plaintiff fail to show at the time of the hearing on summary judgment that he had an expert witness who could testify as to defendant's negligence, but that he also could not show that he could obtain such testimony in the future. These are not the circumstances of the present case. Here appellant listed the names of three expert witnesses in his answers to interrogatories. The deposition of only one was taken. No one knows, particularly the defendants, what these witnesses can testify to. Moreover, plaintiff filed a motion for reconsideration subsequent to summary judgment being granted alleging that he had certain additional information and evidence on the question

of the negligence of defendants, that this evidence would consist of additional testimony of Dr. DeVivo who could and would establish defendants' negligence and that this information had come to plaintiff's attention only on the night prior to the hearing on the motion for summary judgment. This motion for reconsideration was set for hearing on December 22, 1978. On December 20, 1978, plaintiff filed a motion for continuance on the grounds that Dr. DeVivo was leaving St. Louis Children's Hospital for another job which would take him permanently out of St. Louis and that another deposition of Dr. DeVivo could not be taken prior to December 22. However, the trial court denied both motions on December 22. The trial court denied plaintiff's request without the benefit of knowing what the alleged additional testimony by Dr. DeVivo was and the effect it would have. Therefore, it cannot be said that plaintiff could not present expert testimony necessary to establish defendant's negligence.

There are numerous other reasons why that line of cases culminating in *Stevenson v. Nauton* should not be followed here. First, the fact that the trial court did not have before it any testimony given by Doctors Dodge and Pretsky, the other two expert witnesses listed by plaintiff, should have been enough to preclude the granting of summary judgment. Plaintiff had done his part in fulfilling the discovery requested by defendants by giving the identity of his experts. The defendants, in order to properly argue that plaintiff did not have and apparently could not obtain expert testimony to sustain his cause of action, should have taken the depositions of the other two experts, or have them testify under subpoena at the motion hearing, in order to dispel the potential impact they might have on the case and for the trial court to properly rule on the motion. This is so because plaintiff is under no duty to defend defendants' case for them. Therefore it cannot be said that plaintiff would be unable to adduce expert testimony that defendants had breached the appropriate standard of medical care.

Second, it is well recognized that the plaintiff in a medical malpractice case is often unable to find a medical expert willing to testify against a fellow physician. (*L'Orange v. Medical Protective Co.* (6th Cir. 1968), 394 F.2d 57; *Huffman v. Lindquist* (1951), 37 Cal. 2d 465, 484, 234 P.2d 34, 46 (Carter, J., dissenting); *Berkey v. Anderson* (1969), 1 Cal. App. 3d 790, 798, 82 Cal. Rptr. 67, 72-73; *Cline v. Lund* (1973), 31 Cal. App. 3d 755, 107 Cal. Rptr. 629; *Hill v. Lutheran Hospital* (1978), 58 Ill. App. 3d 1003, 1009; *Sanders v. Frost* (1969), 112 Ill. App. 2d 234, 241.) The result of the so-called "conspiracy of silence" is that a plaintiff with a meritorious cause of action is often unable to acquire expert witnesses to help establish his case. The Illinois courts have recognized this dilemma which a plaintiff faces and have accordingly advised trial courts to exercise

extreme caution in granting a summary judgment. (*Hill v. Lutheran Hospital; Sanders v. Frost.*) Consistent therewith, the appellate court must be satisfied that we are not sanctioning a procedure fraught with the possibility of denying to appellant and future litigants their fundamental rights to have access to the courts, present their cases, and obtain remedies. (Ill. Const. 1970, art. I, §12.) However, that is surely the result if we turn appellant out of court on the basis of deposition testimony of one medical expert who could not render a definitive opinion, particularly when he had two other experts waiting in the wings whose opinions no one yet knows. I refuse to endorse such a procedure.

Third, I note that the depositions of defendants were not taken and therefore the trial court granted summary judgment without benefit of hearing their expert opinions. While plaintiff might be faulted for not deposing defendants, he need only establish a prima facie case at trial. This is why the court in *Mendelson v. Feingold* held that granting summary judgment without first hearing from defendants would have been erroneous. A plaintiff may elect, by choice or necessity, to proceed under section 60 of the Civil Practice Act at trial, which provides in pertinent part:

> "Upon the trial of any case any party thereto * * * may be called and examined as if under cross-examination at the instance of any adverse party." (Ill. Rev. Stat. 1977, ch. 110, par. 60.)

Or the standard of care may be established by cross-examination of the defendant or his witnesses. In either case, it is possible that appellants could extract enough admissions from appellees to establish the applicable medical standard of care and their breach thereof to make out a prima facie case of liability. These practices have been absolutely sanctioned by our courts. *Walski v. Tiesenga* (1978), 72 Ill. 2d 249, 259, 381 N.E.2d 279; *Plost v. Louis A. Weiss Memorial Hospital* (1978), 62 Ill. App. 3d 253, 258; *Schaefer v. Sippel*, 58 Ill. App. 3d 816, 820; *Casey v. Penn* (1977), 45 Ill. App. 3d 573, 360 N.E.2d 93, *aff'd on rehearing* (1977), 45 Ill. App. 3d 1068, 362 N.E.2d 1373; *Anderson v. Martzke* (1970), 131 Ill. App. 2d 61, 65; *Comte v. O'Neil* (1970), 125 Ill. App. 2d 450, 261 N.E.2d 21; *Gorman v. St. Francis Hospital* (1965), 60 Ill. App. 2d 441, 445, 208 N.E.2d 653.

Furthermore, defendants must show that they are entitled to a summary judgment as a matter of law. In order to do so, they must adduce evidentiary facts which negate the existence of any genuine dispute as to a material fact and present a case free from doubt. Without the benefit of an affidavit or deposition from them, which rebuts inferences favorable to plaintiff, they have not met their burden of showing entitlement to summary judgment. *Dakovitz v. Arrow Road Construction Co.* (1975), 26 Ill. App. 3d 56, 64, 324 N.E.2d 444.

Fourth, I reiterate that there is no rule prohibiting either party from first engaging an expert after trial has commenced. (*Simpson v. Johnson* (1977), 45 Ill. App. 3d 789, 797; *Burns v. West Chemical Products, Inc.* (1973), 12 Ill. App. 3d 947, 956, 299 N.E.2d 455; *Karris v. Goldman* (1969), 118 Ill. App. 2d 85, 92, 254 N.E.2d 605.) While this rule is not commended, the Illinois courts have allowed an 11th-hour expert to testify where plaintiff was diligent in his search for an expert but was unable to engage one prior to trial. The interests of justice outweigh the possible inconvenience to the parties under such circumstances.

I note, finally, that appellees have throughout this case urged that appellant has been dilatory in pursuing discovery. The trial court expressly considered the fact that the case had been pending over five years at the time appellant's motion for reconsideration was denied. While I in no way countenance extended delays in the pursuit and disposition of cases, I also note appellees' failure to depose all of appellant's expert witnesses and failure to petition the trial court for any formal relief pursuant to Supreme Court Rules 219(c) and (d) (Ill. Rev. Stat. 1977, ch. 110A, pars. 219(c), (d)). I believe the proper solution for any solicitude regarding delay would be setting the case for trial rather than dismissing it via summary judgment. In that way, appellant would not be erroneously punished for his failure to obtain expert testimony and to establish a prima facie case at the time of the motion hearing, when the proper time for such action is the threshold moment of trial.

Therefore, I would reverse the judgment of the circuit court and remand this cause for further proceedings.