[No. 2358–2.   Division Two.   October 21, 1977.]

VERNON E. SWANSON, *Individually and as Administrator, Appellant,* v. MARTHA M. BRIGHAM, *Respondent.*

*Neil J. Hoff* (of *Hoff & Cross*), for appellant.

*Allan R. Billett,* for respondent.

PEARSON, C.J.—Plaintiff appeals from a summary judgment which dismissed a wrongful death action against Dr. Lawrence N. Brigham. The issues on appeal are: (1) Did the trial court err in refusing to hold that the doctrine of res ipsa loquitur was applicable? (2) Did the trial court err in failing to apply the standard of care adopted in *Helling v. Carey,* 83 Wn.2d 514, 519 P.2d 981, 67 A.L.R.3d 175 (1974)? For the reasons stated below, we affirm.

On January 7, 1973, Dr. Brigham admitted 15–year–old Randall Swanson to a hospital for the treatment of infectious mononucleosis. The patient's symptoms had included a swollen throat and some breathing difficulty. Early in the morning of January 9 the patient was restless, and at 1:30 a.m. Dr. Brigham examined the patient. His inspection of the patient's air passage revealed that it was in satisfactory condition. At 4:15 a.m. Dr. Brigham received a telephone call from the hospital, advising him that the patient was having respiratory difficulty. The doctor ordered that oxygen be administered and he prepared to leave for the hospital. Ten minutes later, 4:25 a.m., the hospital called a second time to advise the doctor that the patient was not responding. The doctor ordered that a medicine be administered, and he departed for the hospital. When he arrived, the physician who had been on call at the hospital had

begun attempts to revive the patient. Dr. Brigham joined him in the effort, but the patient died.

The doctor who performed the autopsy concluded that the patient died between 4:25 a.m. and 4:30 a.m. of asphyxia, as a result of a sudden, acute closing of the air passage. He also found that the air passage had been adequate to maintain life up to 2 or 3 minutes prior to death. He did not know what caused the air passage to suddenly close.

Randall Swanson's father, both individually and as executor for Randall's estate, brought a wrongful death action against Dr. Brigham.[1] On defendant's motion for summary judgment, plaintiff did not present any expert medical testimony. Defendant presented the affidavit of a specialist in pediatric medicine, which stated that Dr. Brigham had followed the standard of care of good medical practice in the care and treatment of the patient.

■ Plaintiff first contends that the trial court erred in failing to deny defendant's motion for summary judgment on the ground that res ipsa loquitur was applicable. It is clear that res ipsa loquitur can be applicable to physicians. *ZeBarth v. Swedish Hosp. Medical Center*, 81 Wn.2d 12, 499 P.2d 1, 52 A.L.R.3d 767 (1972). Whether the doctrine applies in a given situation is a question of law. *Zukowsky v. Brown*, 79 Wn.2d 586, 488 P.2d 269 (1971). Three elements are necessary for the application of res ipsa loquitur: (1) the occurrence producing the injury must be of a kind which ordinarily does not occur in the absence of negligence; (2) the injury is caused by an agency or instrumentality within the exclusive control of the defendant; and (3) the injury–causing occurrence must not be due to any contribution on the part of the plaintiff. *Zukowsky v. Brown, supra; Horner v. Northern Pac. Beneficial Ass'n Hosps., Inc.*, 62 Wn.2d 351, 382 P.2d 518 (1963).

---

[1] An action brought against the hospital was dismissed on summary judgment and the appeal from that judgment has been dismissed.

■ There are three situations when the first element is established: (1) when the act causing the injury is so palpably negligent that it may be inferred as a matter of law, *i.e.,* leaving foreign objects, sponges, scissors, and so forth, in the body, or amputation of a wrong member; (2) when the general experience and observation of mankind teaches that the result would not be expected without negligence; and (3) when proof by experts in an esoteric field creates an inference that negligence caused the injuries. *ZeBarth v. Swedish Hosp. Medical Center, supra; Horner v. Northern Pac. Beneficial Ass'n Hosps., Inc., supra.*

It is a rare occurrence when someone admitted to a hospital for the treatment of infectious mononucleosis dies of asphyxiation. But that is not sufficient to invoke res ipsa loquitur. The fact that the injury rarely occurs does not in itself prove that the injury was probably caused by someone's negligence. *Mason v. Ellsworth,* 3 Wn. App. 298, 474 P.2d 909 (1970). Nor is a bad result by itself enough to warrant the application of the doctrine. *Nelson v. Murphy,* 42 Wn.2d 737, 258 P.2d 472 (1953). *See* 2 S. Speiser, *The Negligence Case—Res Ipsa Loquitur* § 24:10 (1972).

The evidence presented is insufficient to establish the first element necessary for application of res ipsa loquitur doctrine. The acute closing of the patient's air passage and his resultant asphyxiation took place over a very short period of time. Under these circumstances it would not be reasonable to infer that the physician was negligent. There was no palpably negligent act. The common experience of mankind does not suggest that death would not be expected without negligence. And there is no expert medical testimony to create an inference that negligence caused the injury.

In view of the absence of the first element, the trial court was warranted in holding that res ipsa loquitur was not applicable, and we need not evaluate the absence or presence of the two additional elements necessary for application of that doctrine.

The second issue involves the standard of care adopted in *Helling v. Carey, supra.* In *Helling* the court held that a standard of reasonable prudence required that an ophthalmologist give a simple pressure test to detect glaucoma, even when the standards of the ophthalmologist profession did not require that the test be given. Plaintiff contends that Dr. Brigham violated a standard of reasonable prudence regardless of the standards of the medical community. The ruling in *Helling* was intended to be restricted solely to its own unique facts. *Meeks v. Marx,* 15 Wn. App. 571, 550 P.2d 1158 (1976). The circumstances in this case are not analogous to the *Helling* case. There is no medical testimony that a simple, economical, objective and absolutely reliable test would have prevented the outcome in this case. The standard of care required in this case is the same as in other medical malpractice cases.

■ Absent special exceptions, a plaintiff patient must establish the standard of professional practice at the time of the alleged injury and a violation of that standard, through the testimony of the professional equals of the defendant physician. *Miller v. Kennedy,* 11 Wn. App. 272, 522 P.2d 852 (1974), *aff'd,* 85 Wn.2d 151, 530 P.2d 334 (1975); *Jankelson v. Cisel,* 3 Wn. App. 139, 473 P.2d 202 (1970).

The exceptions to the requirement of expert medical testimony do not apply. As indicated in our discussion of res ipsa loquitur above, the claimed negligence is not so grossly apparent that a layman would have no difficulty in recognizing it as a departure from prevailing standards. Nor is it negligence as a matter of law. The doctrine of judicial notice does not apply to establish the standard of care and its breach. Therefore, without expert medical testimony, there was no issue of negligence for the trier of fact. *Shoberg v. Kelly,* 1 Wn. App. 673, 463 P.2d 280 (1969); *Stone v. Sisters of Charity,* 2 Wn. App. 607, 469 P.2d 229 (1970). The plaintiff's failure to present essential expert medical testimony, or at a minimum to demonstrate that such evidence would be available for a trial, was sufficient

652

justification for the trial court's summary judgment. *Shoberg v. Kelly, supra.*
We affirm.

PETRIE and REED, JJ., concur.