[No. 4980–I. Division One. December 29, 1980.]

CLAUDE J. LeBEUF, ET AL, *Appellants,* v. JOHN H. ATKINS, ET AL, *Respondents.*

*Duncan A. Bonjorni*, for appellants.

*Edward S. Winskill*, for respondents.

DORE, J.—On March 19, 1979, this court held that the trial court had erred in granting the defendant a summary judgment, holding that there were disputed issues of fact on the three issues in the above captioned case: (1) on primary negligence, (2) on informed consent, and (3) on post-operative negligence (22 Wn. App. 877, 594 P.2d 923 (1979)). There was a dissent, questioning the completeness of the record. An appeal ensued.

On January 10, 1980, the Supreme Court reversed and remanded this case to the trial court directing it to certify the *precise evidence* it considered in granting defendant's motion for summary judgment. Subsequently the parties filed a supplemental certificate to report of proceedings, which provided:

> The following items and matters were considered by The Honorable Stanley W. Worswick, Judge of the Superior Court for Pierce County, in the hearing for

summary judgment, on Friday, the 14th day of May, 1976, and are the precise matters considered by the court in ruling on the motion for summary judgment:

1. Affidavit of Dr. David O. Moline, D.D.S.
2. Affidavit of Dr. Robert Tuby, M.D.
3. Deposition of Claude LeBeuf
4. Deposition of Dr. Robert Crabill
5. Deposition of Dr. Richard A. Ellingson
6. Summons and Complaint for Damages
7. Answer and Cross–Claim of Defendant Atkins
8. Defendant Atkins Motion for Summary Judgment
9. Defendant Atkins Memorandum of Law in Support of Motion of Summary Judgment
10. Plaintiff's Memorandum of Law Resisting Motions for Summary Judgment.

Plaintiff is now deceased, but the record on this appeal remains the same, except we now know *precisely* the evidence upon which the trial judge based his summary judgment of dismissal for defendants.

Since our last opinion, we are enlightened by *Gates v. Jensen,* 92 Wn.2d 246, 595 P.2d 919 (1979), wherein a patient went blind as a result of an eye physician's failure to detect glaucoma, which could have readily been determined by two additional diagnostic tests for glaucoma, which were simple, inexpensive and riskfree, but which tests were ignored by the eye physician.

In reversing the trial court and remanding for a new trial, in reference to informed consent, the court stated at page 251:

The physician's duty of disclosure arises, therefore, whenever the doctor becomes aware of an abnormality which may indicate risk or danger. *Betesch v. United States,* 400 F. Supp. 238 (D.D.C. 1974). The facts which must be disclosed are all those facts the physician knows or should know which the patient needs in order to make the decision. To require less would be to deprive the patient of the capacity to choose the course his or her life will take.

In reference to malpractice, *Gates* held that the requirement that a physician exercise reasonable and prudent care under the circumstances is not abrogated by RCW 4.24.290

so long as the degree of skill required of a physician by the "reasonable prudence" standard is possessed by others in the same profession.[1]

From the items set forth in the parties' supplemental certificate of report of proceedings, which have been identified as the precise matters the trial court considered in ruling on the motion for summary judgment, the following facts are established.

On May 19, 1972, the late Claude J. LeBeuf was driven by his wife to the office of the defendant, Dr. John H. Atkins, for the removal of an impacted wisdom tooth. LeBeuf had been suffering from severe headaches prior to this date and had a severe headache the day he was taken to Dr. Atkins' office. The day prior to the extraction, LeBeuf had described his headache as feeling like his "head was exploding." LeBeuf did not know if he had high blood pressure or hypertension and he had never been diagnosed as having such problems.

Dr. Atkins did not check LeBeuf's blood pressure although he was competent to take blood pressure and it would have taken him only minutes to complete the test. Prior to the extraction, at the request of the defendant, LeBeuf completed a written questionnaire, designated as a medical history. The defendant subsequently injected LeBeuf with Xylocaine, a local anesthetic containing epinephrine, which is a vasoconstrictor. He then performed the oral surgery.

---

[1]The dissent in *Gates* alludes to legislative intent in reference to repeal of *Helling v. Carey,* 83 Wn.2d 514, 519 P.2d 981, 67 A.L.R.3d 175 (1974), based on the contents of an alleged committee report on Substitute House Bill 246, 44th Legislature (1975), now RCW 4.24.290. A search of the 1975 Senate and House Journals discloses a House committee report on SHB 246. However, such committee report is totally devoid of any language expressing legislative intent or any language giving "Purpose of Bill and Effect on Existing Law" or "Effect of Substitute Bill." SHB 246 committee report simply alleges that a majority of the committee favors the bill and lists the members' signatures, and reports the substitute bill back to second reading before the House.

Any memos, reports, or statements not contained in a written committee report read into the journal, cannot be used to interpret legislative intent in passing the measure.

After the operation, LeBeuf's wife, Jean, remained with him throughout the period of time he was lying down. She testified by affidavit that she observed her husband suffering from fever and chills and he appeared disoriented. "His eyes were staring blankly and when I moved my hand in front of his eyes and toward his face, there was no reaction by him at all." LeBeuf was then assisted to his car by his wife and defendant, where he became ill, vomiting on two occasions. LeBeuf was then taken home and put to bed.

The following morning when his condition worsened, LeBeuf was taken to the hospital, where he was admitted on a preliminary diagnosis of cerebral hemorrhage or stroke. He became totally disabled and recently died. During this postsurgical period, defendant failed to give any instructions or treat plaintiff.

LeBeuf sued defendants for damages, alleging malpractice, consisting of Dr. Atkins' (1) failure to determine that he was suffering from hypertension and/or high blood pressure at the time that he was injected with Xylocaine which drug he claims brought on his stroke, (2) that the defendant knew or should have known of the risks involved in injecting Xylocaine into a patient suffering from hypertension and/or high blood pressure and that he failed to inform him of the risks involved in this procedure, and (3) that the defendant dentist was negligent in his postoperative treatment.

## DECISION

We would reverse the defendant's summary judgment of dismissal.

LeBeuf produced the following testimony on the issue of standard of professional care of a dentist:

1. The *Physicians' Desk Reference* (1979) contains warning about the use of Xylocaine containing epinephrine with patients suffering from hypertension, high blood pressure, or cardiovascular disease.

2. LeBeuf produced an affidavit from Dr. Robert Tuby, M.D., a medical doctor with impressive medical accreditations. Dr. Tuby stated that in making his medical evaluation of causation in the subject case, he reviewed LeBeuf's medical records, including the following materials:

(a) The medical records of plaintiff from Lakewood General Hospital and Tacoma General Hospital;

(b) The depositions of Drs. Atkins, Ellingson and Crabill and Mr. and Mrs. LeBeuf;

(c) The affidavits of Dr. David Moline, D.D.S. and Mrs. LeBeuf;

(d) The Physicians Desk Reference with respect to the drug xylocaine manufactured by Astra Pharmaceutical Products, Inc.

and concluded via his affidavit:

That it is his opinion that Claude LeBeuf was probably suffering from hypertension accompanied by high blood pressure at the time he was operated on by Dr. Atkins, and that the injections of Xylocaine with epinephrine probably caused the ensuing damage to Claude LeBeuf's central nervous system and it is more likely than not that this resulted in a subarachnoid hemorrhage.

3. Dr. David O. Moline, D.D.S., a graduate of the University of Washington Dental School, who is licensed to practice dentistry in Washington, Oregon and British Columbia, testified via affidavit. He related that he had practiced dentistry in the state of Washington for 21 years from 1953 to 1974, with the last 17 years in Olympia, Washington; that currently he is an associate professor at Louisiana State University's Medical Center School of Dentistry, and director of the general dentistry residency program at Charity Hospital, New Orleans, and L.S.U. Medical Center. He stated that he formerly was in a group practice at Olympia, Washington, and in 1972, was familiar with what were the accepted standards of practice of the dental profession in Western Washington. He alleges that he reviewed the testimony of Drs. Atkins, Ellingson and Crabill, and Mr. and Mrs. LeBeuf, and concluded

THAT, it is his opinion that the pre–anesthetic history obtained by Dr. Atkins was not adequate in that he omitted to determine whether the patient had hypertension or high blood pressure and the failure to do this was not consistent with the accepted standard of care among the dental profession in western Washington in 1972.

■ The affidavits of Drs. Tuby and Moline, and Mrs. LeBeuf, and the answers to interrogatories of LeBeuf, most certainly raise a factual issue as to whether the defendant Atkins satisfied "that degree of care and skill which is expected of the average practitioner in the class to which he belongs, acting in the same or similar circumstances." *Pederson v. Dumouchel,* 72 Wn.2d 73, 79, 431 P.2d 973, 31 A.L.R.3d 1100 (1967); *Meeks v. Marx,* 15 Wn. App. 571, 550 P.2d 1158 (1976); *Swanson v. Brigham,* 18 Wn. App. 647, 651, 571 P.2d 217 (1977); *Gates v. Jensen, supra.*

### INFORMED CONSENT

Enactment of RCW 4.24.290, Laws of 1975, 1st Ex. Sess., ch. 35, § 1, p. 252, had no impact on the doctrine of informed consent of a patient, as such doctrine is specifically excluded from this statute.

The doctrine of informed consent requires the physician to disclose to the patient the risks of the treatment, the risks of alternate treatments available, the risk attendant to each, as well as the risk attendant to no treatment at all. *Miller v. Kennedy,* 11 Wn. App. 272, 522 P.2d 852 (1974), *aff'd,* 85 Wn.2d 151, 530 P.2d 334 (1975).

■ The risk that plaintiff was exposed to was established by the affidavits of Drs. Tuby and Moline, as required by *Miller v. Kennedy, supra.*

Here, a simple test of a few minutes' duration which Dr. Atkins presumably was capable of administering would have informed the defendant that LeBeuf had high blood pressure. Clearly, under *Miller v. Kennedy, supra,* plaintiff was entitled to be informed of this "simple" test which possibly might have prevented his stroke, and subsequent disability and death.

The medical risks involved in injecting Xylocaine, containing epinephrine, were established by medical testimony in the record. The defendant dentist admittedly failed to inform LeBeuf of such risks, which he was entitled to know. This evidence raises factual issues on "informed consent" which can only be resolved by the trier of the facts.

### Postoperative Negligence

Plaintiff pleaded alternative theories of negligence on Dr. Atkins' postsurgery treatment, as follows:

B. Failing to treat and observe the plaintiff subsequent to the surgery performed.

C. In discharging the plaintiff at a time when he was getting worse instead of better.

D. Failure to obtain treatment and/or institute any corrective procedures upon learning of plaintiff's condition.

E. Failure to advise plaintiff as to the possible side effects of xylocaine and corrective procedures necessary to minimize side effects.

. . .

I. In doing a surgical procedure which the defendant was not competent to do.

Mrs. LeBeuf stated that although her husband was deathly ill following the operation, Dr. Atkins refused to render any medical assistance but insisted he be immediately taken home. From Mrs. LeBeuf's affidavit, there is a definite inference that Dr. Atkins did not perform his professional skills following the operation (when it was obvious that LeBeuf had suffered a stroke and needed medical help) with the care, skill and learning possessed by other members of the dental profession. As a result, it is claimed that LeBeuf was more severely damaged than he would have been had he had proper postsurgical care. Neither party offered direct testimony from any dentist on the "standard of care" to be rendered postoperatively on a wisdom tooth extraction. However, the pleadings and Mrs. LeBeuf's affidavit raise a factual inference that LeBeuf did not receive proper care postoperatively and therefore a summary judgment of dismissal on this issue may not be

granted. *Duffy v. King Chiropractic Clinic,* 17 Wn. App. 693, 565 P.2d 435 (1977).

We reverse and remand to the trial court for trial consistent with this opinion.

CALLOW, C.J. (concurring)—Again, I concur in the result which remands the cause for trial on the merits. The action should not have been disposed of on summary judgment. The affidavit of Dr. Moline is ambiguous in that it states:

> [T]he pre–anesthetic history obtained by Dr. Atkins was not adequate in that he omitted to determine whether the patient had . . . high blood pressure and the failure to do this was not consistent with the accepted standard of care among the dental profession in western Washington in 1972.

At the very least, a question was raised as to the standard of care in the profession under the circumstances. It is one thing to determine if a patient has a *history* of high blood pressure, and another thing to test a patient prior to administering an anesthetic to determine if high blood pressure is *then* present. Dr. Moline's affidavit was confusing as to whether it was the standard of care of the dental profession to inquire only into the *history* of the patient, or to perform the usual blood pressure tests as well. This question having been raised, it was not proper to dismiss the cause of action on summary judgment, but to resolve it by trial.

ANDERSEN, J. (concurring in the result)—Based on the complete record which we now have before us for the first time, and on *Gates v. Jensen,* 92 Wn.2d 246, 595 P.2d 919 (1979) decided by the State Supreme Court subsequent to this court's first decision in the present case (*LeBeuf v. Atkins,* 22 Wn. App. 877, 594 P.2d 923 (1979)), I agree with

the concurring opinion of my brother judge Callow.

Reconsideration denied January 19, 1981.

Review denied by Supreme Court April 3, 1981.